THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LESLIE FEAGANS, Defendant-Appellant.

Fourth District   No. 4—83—0067

Opinion filed October 27, 1983.

Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman and John M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Defendant was convicted by a jury of the offenses of murder and armed robbery, violations of sections 9—1 and 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1 and 18—2). He was sentenced to concurrent terms of 30 years for murder and 10 years for armed robbery.

The principal evidence against defendant consisted of two lengthy

statements made by him to the police. On April 27, 1982, the police had been alerted by an anonymous telephone caller that defendant may have been involved in a slaying. Defendant's statements were obtained after a resulting investigation. One statement was made to Detective Thomas Kramp of the Springfield police department on April 28, 1982. The other was made on the following day to Detective Al Sample of the Sangamon County sheriff's department.

Both statements were substantially the same in content. They described the events which culminated in the robbery and murder of Charles Cummings, the victim. In the statements, defendant admitted that on March 18, 1982, he spent the evening drinking at several Springfield taverns with Cummings, David Landers, and Robert Feagans, defendant's brother. Defendant knew the victim only as Chuck and claimed to have met him at one of the taverns. During the course of the evening, defendant bought Cummings several drinks; while the four were driving in Robert Feagans' car, defendant asked Cummings to repay him for the liquor he had purchased. Cummings, however, responded that he had no money. With that, defendant threatened the victim with a leaded club which was handed to him by Landers. At some point, Landers suggested that they kill Cummings. Defendant claimed that he protested and thought that he, Landers, and his brother had agreed to simply drop the victim off in the woods so that he would have to walk back to town. Defendant told Cummings to remove his shirt and shoes. His shoes and glasses were thrown out of the window. Defendant stated that he tore the victim's shirt into strips and then handed the strips to his brother who used them to tie Cummings' hands. Defendant claimed that he was so intoxicated that he lost consciousness. When he revived, the victim was no longer in the car.

Later, defendant claimed that Landers and his brother informed him that they had taken $2.35 from Cummings and then pushed him over a bridge. Defendant stated that he was unsure whether Landers and his brother had told him the truth about what happened to Cummings. On April 27, 1982, he decided to return to some of the taverns where he, Cummings, Robert Feagans, and Landers had been drinking on March 18. He sought to determine whether any of the bartenders recalled seeing them that night.

Defendant claimed in his pretrial statements that he had nothing to do with pushing the victim over the bridge and that he received none of the victim's money.

Other prosecution evidence confirmed that the four had been drinking together on March 18. A bartender from the Runway Tavern

in Springfield recalled that he refused them service because all four men were obviously intoxicated. He, however, allowed them to purchase a six-pack of beer before leaving the tavern. Another bartender testified that defendant and Cummings were in his place of business on March 18 and were seen drinking and playing pool with two other men. He recalled that defendant returned to the tavern on April 27, 1982, inquiring about Cummings. In the course of their conversations on this day, defendant stated that he thought Cummings had been killed. After defendant left the tavern on April 27, the bartender contacted the police. It was apparently this telephone call which prompted the police to investigate Cummings' disappearance.

Cummings' body was found on May 2, 1982. It was discovered by two fishermen on the east bank of the Sangamon River near the Route 29 Sangamon River bridge. The victim had apparently been gagged and his hands and legs had been bound. The cause of his death was determined to have been drowning. Although $60 was recovered from one of the victim's socks, one of his pants pockets had been turned inside out, indicating that he had been robbed.

Defendant's testimony at trial largely paralleled his pretrial statements. He claimed, however, that he had nothing to do with preparing the bindings for the victim's hands. Defendant also attempted to minimize the nature of the threat he employed when he asked Cummings to repay him for the drinks he had purchased. Defendant again claimed that he was intoxicated and was unconscious at the time Landers and his brother robbed and murdered the victim. Defendant estimated that he drank more than a case of beer during the afternoon and evening of March 18.

Donna Feagans, defendant's wife, testified that her husband arrived home during the early morning hours of March 19. He had been driven home by David Landers and Robert Feagans. She described defendant as "totally drunk" when he entered the house at this time. Mrs. Feagans also testified that it was not unusual for her husband to lose consciousness after consuming excessive amounts of alcohol.

The State proceeded under the theory that defendant was accountable for the conduct of Landers and Robert Feagans. The jury was instructed on the law of accountability and returned general verdicts of guilty to charges of murder and armed robbery.

Defendant does not contest the sufficiency of the evidence against him. Instead, he complains that the statement he made to Detective Kramp on April 28 was improperly admitted into evidence. Defendant challenged the admissibility of both of his statements to the police in a written pretrial motion to suppress. He alleged, in part, that the

statements were involuntary because he was again intoxicated at the time they were made. During the hearing on defendant's motion to suppress, Officer Kramp testified that on April 28, he interrogated defendant and also wrote down his statement. In Kramp's opinion, defendant was not intoxicated at the time. Kramp, however, acknowledged that Officer Duke, an identification officer, witnessed defendant's signature to the statement and was also present when the statement was made. Duke, however, did not testify at the suppression hearing, nor was his absence explained by the State. Defendant contends that the State's failure to call Duke as a witness mandates the suppression of his statement to Kramp and warrants a reversal of his conviction.

█▌ █ It is well established that when the voluntary nature of a confession is called into question by a motion to suppress, the State has the burden of proving that the confession or statement was voluntarily given. (*People v. Armstrong* (1972), 51 Ill. 2d 471, 282 N.E.2d 712.) The State can discharge this burden only by producing all material witnesses connected with the controverted statement or explain their absence. *Armstrong.*

█▌ The People urge that there was no indication that Officer Duke actively participated in the interrogation or did anything more than merely observe defendant sign his statement. They argue there was nothing to demonstrate that Duke was any more of a material witness than any other police personnel who happened to be present at police headquarters and who may have briefly observed defendant. The record, however, belies these contentions. The following occurred at the suppression hearing during cross-examination of Officer Kramp:

"Q. Okay. So he [Duke] was there at the time you made or at the time you made the warnings and the time you gave Mr. Feagans his rights and he was also there during the question and answer period?

A. That's correct.

Q. Was he there during the time that Mr. Feagans read over his statement and signed it?

A. Yes, sir, I believe he was. He was there during the whole thing, if I recall.

Q. All right. And if Mr. Feagans was intoxicated or not intoxicated presumably he would have an opinion or be able to form a judgment of that matter, too?

A. That's correct."

Clearly, Officer Duke was a material witness to defendant's state-

ment. The State should either have had him testify or explained his absence. Defense counsel timely objected to the witness' absence. The trial court ruled that both statements were voluntarily made without specifically addressing defendant's objection. Under these circumstances, we conclude that defendant has demonstrated error. Defendant's statement to Detective Kramp should have been suppressed.

The State, however, urges that defendant's statement to Detective Sample on April 29 convincingly established his guilt. Defendant, on appeal, does not challenge the admissibility of his statement to Samples. As already noted, both of defendant's pretrial statements were similar in content. Accordingly, the People urge that any error in the admission of his statement to Kramp was harmless beyond a reasonable doubt. See *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

■ We view the evidence in this case as closely balanced. There was no evidence suggesting that defendant acted as a principal. His pretrial statements indicated a more active involvement in the crimes than did his trial testimony. The prosecutor, in an attempt to bolster his case, argued to the jury that defendant's pretrial statements were more believable because they were consistent and tended to corroborate each other. We thus cannot discount the effect that the improperly admitted evidence might have had upon the jury and are persuaded that defendant was denied his right to a fair trial.

■ Defendant has also demonstrated reversible error in the jury instructions. He tendered to the court a voluntary intoxication instruction. Voluntary intoxication is an affirmative defense if the defendant's intoxicated condition negatives the existence of a mental state which is an element of the offense. (Ill. Rev. Stat. 1981, ch. 38, par. 6—3.) The court refused the instruction, concluding:

"I grant you your client *** may have finally passed out and been drunk and not capable of forming any intent at the stage that he claims, but before that stage he testified he remembered what happened and I do not believe that he was intoxicated to the extent claimed."

■ The evidence upon which defendant was convicted was designed to prove that he was accountable for the conduct of David Landers and Robert Feagans. Because of the bifurcated actions of the three men, defendant's convictions for murder and armed robbery required proof of defendant's specific intent to "promote or facilitate" the commission of the offenses. (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c).) Thus, voluntary intoxication was a viable defense in this case, if defendant's alleged intoxication rendered him incapable of acting in-

tentionally.

Generally, voluntary intoxication must be so extreme as to suspend all reason; merely being drunk or intoxicated is insufficient to create a defense. (*People v. Moon* (1982), 107 Ill. App. 3d 568, 437 N.E.2d 823.) Here, defendant gave unrebutted testimony that he consumed in excess of a case of beer on the day in question. Other witnesses corroborated the fact that he was extremely intoxicated. Defendant claimed that his intoxication rendered him unconscious at the time the victim was robbed and murdered. The People, however, argue that there was no indication of defendant's inability to think up until the point where he purportedly lost consciousness, by which time the defendant had already facilitated the commission of the crime. They point to defendant's ability to recall the events which preceded his loss of consciousness. Nonetheless, if defendant's testimony is believed, his intoxication must have been extreme. The fact that the trial court did not believe that defendant was intoxicated to the extent that he claimed is irrelevant. Sufficient evidence was presented to raise an issue of fact for the jury. The tendered instruction should have been given.

Even though the foregoing errors entitle defendant to a new trial, we will briefly address his remaining issue. Defendant complains that the trial court should have excused for cause one of the prospective jurors because he indicated at one point during the *voir dire* that he might consider the testimony of a police officer more favorably than the testimony of other witnesses. Defendant, however, failed to exhaust all of his allotted peremptory challenges. Thus, he is precluded from complaining that the juror was improperly impaneled. See *People v. Ford* (1960), 19 Ill. 2d 466, 168 N.E.2d 33.

For all the foregoing reasons, defendant's convictions for murder and armed robbery are reversed. The cause is remanded for a new trial.

Reversed and remanded for a new trial.

TRAPP and GREEN, JJ., concur.