THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM E. HAYES, Defendant-Appellant.

Fifth District    No. 5—86—0673

Opinion filed August 18, 1988.—Rehearing denied September 23, 1988.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

David W. Hauptmann, State's Attorney, of Harrisburg (Kenneth R. Boyle, Stephen E. Norris, and Wendy B. Porter, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant, William E. Hayes, was convicted by a jury of theft over $300, theft of a firearm, possession of burglary tools, criminal damage to property and two counts of burglary. The circuit court of Saline County sentenced defendant to two 10-year extended terms for the burglary convictions, six-year extended terms for the two theft and possession of burglary tools convictions, and 364 days' imprisonment plus restitution for the criminal damage conviction, with all sentences to be served concurrently. Defendant now appeals his convic-

tions and sentences.

At approximately 2 a.m. on February 21, 1986, James See noticed two new cars pull out of the garage of Pool Pontiac, Buick, AMC in Harrisburg, Illinois. He then observed two men get out of these new cars and make several attempts to close the garage door. The men got back in the cars and drove off, almost hitting See as they drove out of the dealership lot. See followed them for a short time until he determined which direction they were heading and called the police.

Rob McConnell, the deputy sheriff of Saline County, after being notified of these events, drove out to Route 13 in a squad car followed by Officer Ron Crank. McConnell and Crank observed two new 1986 cars with dealer license plates tied on the backs drive south on Route 13 and turn off onto a gravel road. They activated their red lights, and the two 1986 cars sped away. Both cars drove into ditches, backed out and then ran side by side for a quarter of a mile until one car pulled off to the left just before an intersection. Crank chased the turning car until it stopped, and the driver jumped out and ran into a plowed field. Crank then apprehended the driver, codefendant Bill Lands.

In the meantime, the driver of the second 1986 car sped on pursued by McConnell. The driver turned left at the next intersection, proceeded for a mile and one-half, then turned north onto the next gravel road back toward Route 13 when the car ran into another ditch. The tires were spinning and throwing gravel when McConnell ran up to the car and found the driver laying back in the seat, apparently unconscious. McConnell went back to his car to find a tool to pry open the driver's door. As he returned, he found the driver's door ajar about four inches and jammed into the bank of the ditch. He unlocked the passenger door and called several times for the driver to get out. When the driver did not "come around," McConnell, with the help of another officer who had just arrived, dragged the driver out on the ground and handcuffed him. McConnell assisted the driver to his feet when the driver called McConnell by name and said there was no need to be rough. McConnell recognized the driver as being defendant. Defendant was then arrested and taken to police headquarters. All of the officers who observed him characterized defendant as being extremely intoxicated, although able to understand what was being said to him. Crank even noticed that defendant had two beers sticking out of his pockets. Defendant refused to take a breathalyzer test.

The owner of the dealership testified that upon being notified by the police, he went to his lot and discovered a broken window on the

south side of the dealership and the overhead door to the garage partially open. The offices were ransacked. A pistol normally kept in an office drawer, a battery charger, a set of license plates and two new cars were missing. The cars were later returned in dirty condition with one car having a chipped windshield. The battery charger, the pistol and two large knives were found in the trunk of one of the cars.

Defendant presented a defense of voluntary intoxication. According to several of defendant's friends, defendant had been partying and drinking steadily for a two- to three-day period before the incident at the dealership. He had passed out for numerous short periods of time during the two or three days and was unable to eat, being too drunk to bring forkfuls of food into his mouth.

On the evening of the 20th, an employee at a nearby liquor store sold defendant 750 milliliters of Peachtree Schnapps and a 12-pack of Busch beer at approximately 6:30 p.m. The employee believed defendant was already drunk at that time. Defendant returned to the store two more times that evening, sometime between 9 and 10 p.m. and then around 11 p.m., and purchased two more cases of beer and another fifth and a half gallon of Peachtree Schnapps. Defendant later went to Cheers tavern with Lands and two other men and continued drinking. Eventually defendant and Lands left the bar together while the others remained. Neither defendant nor Lands testified at defendant's trial. The jury found defendant guilty on all counts.

Defendant first argues on appeal the trial court erred in refusing to give six defense-tendered instructions referring to the affirmative defense of voluntary intoxication, containing the phrase "at the time of the offense, defendant was capable of acting knowingly," when the court found sufficient evidence of intoxication to merit a jury instruction on voluntary intoxication. Defendant believes the court vitiated the effect of the voluntary intoxication instruction by failing to give the five accompanying issues instructions and the one burden of proof instruction as tendered by him in accordance with the recommendations suggested in the introduction to the chapter on defenses of the Illinois Pattern Jury Instructions.

■ A defendant is entitled to have the jury instructed on the defense of voluntary intoxication when there is evidence on the record of intoxication and a resultant negation of the existence of the requisite mental state for the crime charged. (*People v. Feagans* (1983), 119 Ill. App. 3d 941, 948, 457 N.E.2d 459, 463.) Defendant must show that his intoxication was so extreme as to suspend all reason or to render him incapable of acting knowingly. (*Feagans*, 119 Ill. App. 3d

at 948, 457 N.E.2d at 463; *People v. Moon* (1982), 107 Ill. App. 3d 568, 572, 437 N.E.2d 823, 825; *People v. Aguirre* (1975), 30 Ill. App. 3d 854, 857, 334 N.E.2d 123, 127.) Merely being drunk or intoxicated is insufficient to create the defense. *People v. Thompson* (1984), 125 Ill. App. 3d 665, 676, 466 N.E.2d 380, 389; *Moon*, 107 Ill. App. 3d at 572, 437 N.E.2d at 825.

██ Defendant presented much evidence at trial of his drinking and intoxication. Yet, no evidence of his mental processes being so impaired as to suspend all reason or render him incapable of acting knowingly was ever presented, nor was there any evidence that defendant was suffering from an alcoholic blackout during the commission of the offenses. The evidence, quite frankly, reveals that defendant acted both rationally and with purpose. First, defendant and Lands broke a window to enter the dealership, they ransacked the offices and searched the desk drawers, they removed a pistol from one of the desks, and tied dealer's license plates onto the cars they drove out of the garage. Both men attempted several times to close the garage door, a door which the owner testified is hard to close if one is not familiar with it. When noticed by the police, both attempted to flee in their respective cars. Defendant was physically able to drive a car and continued to try and elude the police once Lands was apprehended. Upon being arrested, defendant recognized the officer and called him by name. He appeared to understand what was being said to him and further refused to take a breathalyzer test once at police headquarters. Such evidence reveals that defendant not only was lucid before, during and after commission of the offenses, but also acted with purpose and rationality, in other words, knowingly and intentionally in committing the crimes. (See *People v. Terry* (1987), 154 Ill. App. 3d 162, 166, 506 N.E.2d 786, 788-89; *Thompson*, 125 Ill. App. 3d at 677, 466 N.E.2d at 389; *Aguirre*, 30 Ill. App. 3d at 858, 334 N.E.2d at 127. See also *People v. Hammock* (1979), 68 Ill. App. 3d 34, 39, 385 N.E.2d 796, 800.) Such evidence would not have justified a jury determination that defendant was so intoxicated as to suspend his power of reason entirely. A trial court has the discretion to refuse to tender a defense instruction on intoxication under such circumstances. *People v. Arnold* (1984), 104 Ill. 2d 209, 214, 470 N.E.2d 981, 984.

██ While the trial court stated there was insufficient evidence to support defendant's defense of voluntary intoxication, the court did give an instruction defining the defense itself. Defendant argues the court erred in not following up this instruction with the modified issue instructions and burden of proof instruction he submitted. In this in-

stance, the trial court did not need to give the defense instruction in the first place. Therefore, the court's refusal to give the additional instructions defendant desired was, at worst, harmless error. The jury was instructed with regard to the definition of voluntary intoxication and to the elements of each offense. The element that defendant acted knowingly was included in each of the issues instructions given. Defendant's tendered instructions would have included "that at the time of the offense, defendant was capable of acting knowingly." Defendant's instructions would not have delineated an additional element the State was required to prove, but merely would have reiterated an already included element. As such they were cumulative and not so fundamental as to constitute reversible error by the court's refusal to give them. (See *People v. Pecka* (1984), 125 Ill. App. 3d 570, 573, 466 N.E.2d 404, 407-08; *People v. Pahlman* (1977), 51 Ill. App. 3d 879, 884, 366 N.E.2d 1090, 1094. See also *Terry,* 154 Ill. App. 3d at 165, 506 N.E.2d at 788; *People v. Sprinkle* (1979), 74 Ill. App. 3d 456, 462-63, 393 N.E.2d 94, 99.) Moreover, errors in the giving or refusing of instructions do not require reversal where the evidence of defendant's guilt is so clear and convincing that a jury could not reasonably have found him not guilty. *Thompson,* 125 Ill. App. 3d at 677, 466 N.E.2d at 389.

Without dwelling on the issue any longer than necessary, this same evidence also establishes that defendant was proved guilty beyond a reasonable doubt of the crimes charged. He acted with purpose and rationality in committing the offenses, in attempting to avoid detection, and in attempting to elude the police. Quite simply, defendant acted intentionally and knowingly in committing the offenses and with the requisite mental state for each offense.

Defendant next argues the prosecutor's closing argument constituted plain error in that it contained inflammatory language, argued facts not in evidence, commented on defendant's post-arrest silence and stated a personal opinion of his guilt. We find defendant's contentions have little merit.

■■ We initially note that defendant has waived any error with respect to the prosecutor's closing argument by failing to object at trial or raise the matter in his post-trial motion. (See, *e.g., People v. Faysom* (1985), 131 Ill. App. 3d 517, 523, 475 N.E.2d 945, 951. See also *People v. Johnson* (1986), 148 Ill. App. 3d 163, 169, 504 N.E.2d 502, 506.) Only where the errors are so inflammatory that defendant could not have received a fair trial, or so flagrant as to threaten deterioration of the judicial process, will we relax the waiver rule. (See *People v. Bramlett* (1985), 131 Ill. App. 3d 616, 620, 476 N.E.2d 44, 47; *Peo-*

*ple v. Barnes* (1983), 117 Ill. App. 3d 965, 977, 453 N.E.2d 1371, 1381-82.) Such is not the case here.

■ Defendant believes the prosecutor argued facts not in evidence while commenting upon his defense of intoxication and further expressed his opinion that defendant was guilty. It is true that a prosecutor may not refer to matters outside the record during argument (see *Johnson*, 148 Ill. App. 3d at 170, 504 N.E.2d at 506; *Faysom*, 131 Ill. App. 3d at 523, 475 N.E.2d at 950), or give his own opinion as to the guilt or innocence of the accused (see *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 108, 289 N.E.2d 256, 260). But, a prosecutor properly may comment on the evidence and any reasonable inferences that can be drawn therefrom, even if detrimental to the defendant. See *Johnson*, 148 Ill. App. 3d at 170, 504 N.E.2d at 506; *Faysom*, 131 Ill. App. 3d at 523, 475 N.E.2d at 950; *People v. Dail* (1985), 139 Ill. App. 3d 941, 944, 488 N.E.2d 286, 287.

■ The prosecutor's comments in this instance that defendant wanted the jury to reward him for being drunk and that defendant believed it was okay to commit crimes if and when drunk were based upon defendant's defense and evidence that he was drunk at the time of the offense. The prosecutor was not ridiculing a legitimate defense but was saying that merely being drunk does not excuse one from the consequences of his crimes. Because the prosecutor's remarks were based upon the evidence in the record and reasonable inferences deducible therefrom, we find no error. (See *People v. Loya* (1980), 90 Ill. App. 3d 1078, 1088, 413 N.E.2d 1361, 1368.) Nor do we find any error in the prosecutor's conclusionary statement that defendant was guilty after discussing the evidence. When read in its entirety and in context, the prosecutor's comment clearly was an opinion based on the evidence adduced at trial and not merely his personal belief. See *Dail*, 139 Ill. App. 3d at 944, 488 N.E.2d at 287.

■ Defendant also contends the prosecutor improperly commented on his post-arrest silence. Generally, evidence of defendant's post-arrest silence is inadmissible because it is neither material nor relevant to proving or disproving the charges against a defendant. (See *People v. McMullin* (1985), 138 Ill. App. 3d 872, 876, 486 N.E.2d 412, 415.) There are exceptions to this rule, however (see 138 Ill. App. 3d at 877, 486 N.E.2d at 416), and one such exception exists here. The prosecutor's comment, when read in context, was intended to show only that defendant was coherent at the time of his arrest and not so intoxicated that he did not understand what he was doing or what was happening. The reference was not calculated to direct the jury's attention to defendant's failure to testify as defendant con-

tends. The prosecutor's remark, therefore, did not constitute plain error. See *People v. Dixon* (1982), 91 Ill. 2d 346, 350-51, 438 N.E.2d 180, 182-83.

■ Defendant's last point pertaining to closing argument is that the prosecutor used language so inflammatory as to prejudice his right to a fair trial. Defendant believes the prosecutor equated the charges against him with those of rape and murder by stating:

> "Anyone who gets out there and commits some kind of crime, be it rape or be it murder, all they have to do is say, 'Jeez, I was drunk,' and they get away with it."

We disagree. The prosecutor was not comparing defendant to rapists and murderers but, instead, was urging the fearless administration of the law by pointing out the evil consequences of excusing someone's criminal act merely because he was drunk at the time. The prosecutor was arguing that if the jury were willing to accept drunkenness as an excuse for the crimes committed by defendant, then the jury also should be prepared to accept it as an excuse for more serious crimes; and if not an excuse for more serious crimes, then it should not be deemed an excuse for defendant's crimes. While a prosecutor should not make statements solely to inflame the passions or arouse the prejudice of the jury, he may properly comment upon the evils of crime and its effect upon the community. (See *People v. Johnson* (1979), 73 Ill. App. 3d 431, 435, 392 N.E.2d 587, 591.) We find no prejudicial error in this instance. Moreover, the prosecutor's comments did not constitute a material factor in the jury's verdict, for the evidence of defendant's guilt was overwhelming. (See *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 887-88, 504 N.E.2d 1283, 1287; *People v. Townsend* (1985), 136 Ill. App. 3d 385, 394, 483 N.E.2d 340, 347; *Faysom*, 131 Ill. App. 3d at 525, 475 N.E.2d at 952.) In addition, the jury was instructed that closing arguments are not evidence and that any argument not based on the evidence should be disregarded, thereby curing any possible prejudice from improper remarks, if any. See *Barnes*, 117 Ill. App. 3d at 978, 453 N.E.2d at 1382; *People v. Smith* (1982), 111 Ill. App. 3d 895, 906, 444 N.E.2d 801, 809.

■ Defendant's final points on appeal all pertain to his sentencing. Defendant first argues he is entitled to resentencing because the trial court relied on certain improper factors and additionally failed to consider his alcoholism as a mitigating factor in making its sentencing determination. We note that defendant did not object at his sentencing to the trial court's remarks. (See *People v. Corrigan* (1985), 129 Ill. App. 3d 787, 794, 473 N.E.2d 140, 144.) In any event, we see no reason for remandment in this instance.

A defendant's demonstrated history of alcoholism is a factor to be considered in sentencing. (*Tannahill*, 152 Ill. App. 3d at 889, 504 N.E.2d at 1288.) The key, however, is demonstrated history. Defendant presented no evidence at trial or at the sentencing hearing that he suffered from alcoholism or alcohol dependency. The trial court therefore had nothing before it to consider in mitigation with regard to alcohol dependency. See 152 Ill. App. 3d at 889, 504 N.E.2d at 1288. *Cf. People v. Walcher* (1969), 42 Ill. 2d 159, 166, 246 N.E.2d 256, 260-61; *People v. Goodman* (1981), 98 Ill. App. 3d 743, 749-50, 424 N.E.2d 663, 668-69.

As for improper factors, reliance on them does not always necessitate remandment. (*People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340.) The trial court pointed out that defendant blamed alcohol for his inability to obey the law. The court also stated that alcohol probably did not change defendant's moral character in any event. Defendant does have an extensive criminal record. More importantly, the trial court gave very little weight to its consideration that alcohol did not affect defendant's "moral code." The court in discussing this factor initially noted that it did not know how true it was. Secondly, the sentence fell within the middle of the allowable range and not the maximum possible. Any weight placed on this factor in view of the court's remarks did not lead to a greater sentence, and therefore, remandment for resentencing is not necessary. (*Bourke*, 96 Ill. 2d at 332, 449 N.E.2d at 1340. *Cf. People v. Vaughn* (1978), 56 Ill. App. 3d 700, 705-06, 371 N.E.2d 1248, 1252-53.) The trial court stated that it had given considerable thought to the appropriate sentence after listening to extensive argument on both sides. We find no abuse of the trial court's discretion in this instance. See *People v. Taylor* (1985), 139 Ill. App. 3d 779, 783-84, 487 N.E.2d 767, 771.

■■■ The trial court did err, however, as the State concedes, in sentencing defendant to five extended-term sentences when three of the sentences were for lesser offenses. Under *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569, extended terms can only be imposed for convictions within the most serious class. (103 Ill. 2d at 206-07, 469 N.E.2d at 575-76.) We therefore must remand this cause for resentencing on the three lesser offenses of theft over $300, theft of a firearm, and possession of burglary tools.

■■■ We must also remand this cause for rehearing on the order of restitution. The trial court, after determining that restitution was appropriate in this instance, failed to set forth a time limit or method of payment as required by statute. See Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(f). See also *People v. Edwards* (1985), 135 Ill. App. 3d

671, 675, 482 N.E.2d 137, 140; *People v. Pearson* (1982), 108 Ill. App. 3d 241, 244, 439 N.E.2d 31, 34.

Defendant argues, however, that the restitution order is still void because the trial court failed to consider his ability to pay any order of restitution. The court is not required to determine a defendant's ability to pay when ordering restitution, but only when determining the manner of payment. (See *People v. White* (1985), 135 Ill. App. 3d 563, 566, 482 N.E.2d 134, 136.) Consequently, the trial court did not err in not determining defendant's ability to pay first. On remand, however, the trial court must consider defendant's ability to pay in making a determination of the method and time of payment of restitution.

■■■ As for the amount of restitution, the trial court ordered defendant to pay the full amount of $1,191.21. Section 5—5—6(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(c)) mandates that each defendant be ordered to pay restitution in the total amount. Whether or not that amount is to be apportioned between codefendants is purely discretionary. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(c)(2).) The trial court therefore did not err in ordering defendant to pay the total amount of restitution. We do note, however, that according to section 5—5—6(c)(3), in the absence of an order apportioning restitution, defendant only bears his *pro rata* share. Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(c)(3).

We also do not find that the order of restitution was subject to change at a future time as defendant contends. The court did acknowledge that defendant could file a motion for modification of sentence as to the amount of restitution. In the absence of such a motion, however, no further hearing was required to determine the amount; it was not left open, nor was it subject to increase or left to someone else's determination. *Cf. People v. White* (1986), 146 Ill. App. 3d 998, 1003, 497 N.E.2d 888, 891; *People v. Daminski* (1980), 80 Ill. App. 3d 903, 906, 400 N.E.2d 708, 711.

Defendant's final contention is that he is entitled to 223 days' credit against his sentences for time spent in custody. As the State concedes this issue also, we need not discuss it further other than to remand this cause for correction of the mittimus to reflect credit for 223 days.

For the reasons stated above, we affirm defendant's conviction on all counts. We further affirm the sentences imposed on the two counts of burglary and on the one count of criminal damage to property. We remand this cause to the circuit court of Saline County, however, for resentencing on the extended-term sentences for theft over $300,

theft of a firearm and possession of burglary tools in accordance with *People v. Jordan*. We also remand for rehearing the order of restitution in order to determine the manner of payment and defendant's ability to pay. Finally, we remand this cause for correction of the mittimus to reflect credit for time defendant spent in custody.

Affirmed in part; remanded with directions.

WELCH and LEWIS, JJ., concur.