THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DARYL REECE, Defendant-Appellant.

Fifth District No. 5—90—0513

Opinion filed May 8, 1992.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Mark C. Hunter, State's Attorney, of Metropolis (Kenneth R. Boyle, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Daryl Reece, appeals both his sentence and conviction for armed violence, aggravated battery, criminal damage to property (over $300), and criminal damage to property (under $300) in connection with an altercation which occurred during the evening of June 3, 1989. After being tried by jury, the circuit court of Massac County sentenced defendant to four years' imprisonment for armed violence and ordered restitution to the victim for medical expenses in the amount of $37,355. Defendant was also sentenced to two six-month terms, to be served concurrently with his armed violence sentence, for each of the criminal damage to property convictions and was ordered to pay an additional $1,803.71 in restitution for repairs to property. The conviction for aggravated battery was merged into the conviction for armed violence.

At approximately 9:30 p.m. on June 3, 1989, the victim, Brian Lewis, drove to the Knotty Pine Tavern in Joppa, Illinois. Defendant and some of his friends were already inside and had become quite rowdy. After approximately 15 minutes, however, defendant and his friends left the tavern. Shortly after they left, Lewis heard loud noises outside the tavern. Being concerned about his new pickup truck, Lewis went outside to check on the noises. Lewis found a dent and several footprints on the hood of his truck. Believing defendant to be responsible for the damage, Lewis set out after him. After driving around town and not finding defendant, Lewis returned to the tavern to enlist help. Lewis took off again with two other men. In the meantime, the truck in which defendant was riding had driven into a ditch. As he and his friends attempted to get their vehicle out of the ditch, Lewis and his companions arrived on the scene. Lewis, who was now carrying a baseball bat, began yelling at defendant that he was going to have to pay for the damage to his truck. According to Lewis, defendant responded he would not pay and began acting wild, throwing karate chops and the like. At this point, defendant's friends fled from the scene. Defendant advanced toward Lewis, yelling at him to drop the bat and fight him hand to hand. Lewis informed defendant that the sheriff was on his way. Defendant then attempted to run away but fell into the ditch. One of Lewis' friends jumped on defendant and held his hands behind his back. Lewis started pushing defend-

ant with the bat. When defendant agreed to pay, the group let him up and started to walk away. Defendant started following Lewis, renewing his protestations he would not pay for any damage while urging Lewis to fight him one on one. Once Lewis and his friends reached the yard where Lewis had moved his truck, Lewis told one of his friends to get a gun. At this point, one of defendant's friends handed defendant a metal pipe. Defendant started swinging the pipe over his head, walked up to Lewis and struck him on the head with the pipe. Lewis immediately went down, and defendant struck him again on the back. Defendant then started hitting Lewis' truck and another car parked nearby with the pipe before fleeing. Others at the altercation testified to basically the same sequence of events with one major exception: Lewis initially hit defendant with the baseball bat at least once and had pushed him with the bat three or four times prior to defendant going after Lewis with the pipe. Lewis suffered a fractured skull and was required to remain in the hospital for over a month. Defendant also was treated at the emergency room that same night for injuries to his head and body. His blood-alcohol level was recorded at .203.

Defendant raises four issues on appeal, the first being the trial court denied him the opportunity to present evidence on his behalf pertaining to his need to use self-defense. Defendant believes the trial court's refusal denied him a fair trial. The evidence defendant attempted to present consisted of damage to the truck he was in allegedly caused by the victim's supporters as well as the existence of a "weapon," a table leg, found by the police near the scene of the altercation. Defendant contends such evidence reveals the extent of the violent and aggressive tendencies of the crowd in general that night thereby substantiating his belief self-defense was necessary. The trial court found such evidence to be irrelevant, not being tied to the immediate altercation between Lewis and defendant when Lewis was hit with the pipe. We agree with the trial court in this instance.

 █ It is true defendant is entitled to all reasonable opportunities to present evidence supporting his theory of defense. (See *People v. Manion* (1977), 67 Ill. 2d 564, 576, 367 N.E.2d 1313, 1319; *People v. Durr* (1978), 58 Ill. App. 3d 525, 532, 374 N.E.2d 873, 878.) It is equally true, however, that it is within the trial court's discretion to exclude such evidence when its relevance is so speculative as to have little probative value. (See *People v. Reese* (1984), 121 Ill. App. 3d 977, 988, 460 N.E.2d 446, 454. See also *People v. Maberry* (1990), 193 Ill. App. 3d 250, 263, 549 N.E.2d 974, 982 (defendant has no right to offer incompetent or irrelevant evidence).) The test for relevancy is

whether the evidence to be offered tends to prove or disprove a disputed issue. (*People v. Molsby* (1978), 66 Ill. App. 3d 647, 657-58, 383 N.E.2d 1336, 1344. See also *People v. Monroe* (1977), 66 Ill. 2d 317, 321-22, 362 N.E.2d 295, 297.) If it does not, there is no error in not allowing in the evidence. We believe the trial court here did not err in not allowing in the proffered evidence. The critical inquiry in assessing self-defense is whether the use of force by a defendant was justified against another use of force. (See *People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 377, 240 N.E.2d 150, 154; Ill. Rev. Stat. 1989, ch. 38, par. 7—1.) The fact that a group of people may have attacked the truck in which defendant had been riding *after* defendant hit Lewis with a pipe does not answer the question whether Lewis, the victim, threatened defendant with imminent use of force prior to being struck so as to justify defendant's theory of self-defense. The actions of others, separate from the victim, cannot justify the use of force against the victim alone, especially when dealing with events which occurred after the altercation between defendant and Lewis. Moreover, defendant presented no evidence of the table leg being used in any manner to threaten himself prior to his hitting Lewis. We also note much of the evidence defendant wished to have entered was introduced or suggested to the jury through various witnesses' testimony. Under these circumstances, we find no abuse of the trial court's discretion in refusing to allow the introduction of such evidence to the jury. *Reese,* 121 Ill. App. 3d at 988-89, 460 N.E.2d at 454; *Durr,* 58 Ill. App. 3d at 533, 374 N.E.2d at 878-79.

 ■ Defendant next argues on appeal the trial court erred in refusing to instruct the jury on the defense of voluntary intoxication. Defendant correctly points out voluntary intoxication is an affirmative defense which excuses the conduct charged if the intoxication is so extreme as to suspend the power of reason and render the defendant incapable of forming the specific intent which is an element of the offense charged. (See *People v. Hayes* (1988), 173 Ill. App. 3d 1043, 1047, 527 N.E.2d 1342, 1346; *People v. Feagans* (1983), 118 Ill. App. 3d 991, 996, 455 N.E.2d 871, 875; Ill. Rev. Stat. 1989, ch. 38, par. 6—3.) Defendant is also correct that only slight evidence is necessary to raise such a defense and justify the giving of a jury instruction on the issue even if the facts upon which the defense is based are inconsistent with a defendant's own testimony, for a defendant is entitled to the benefit of any defense shown by the evidence. (See *People v. Robinson* (1987), 163 Ill. App. 3d 754, 761, 516 N.E.2d 1292, 1298-99.) The key, however, is shown by the evidence. (See *Molsby,* 66 Ill. App. 3d at 659, 383 N.E.2d at 1345.) Merely being drunk or intoxicated is

insufficient to create a defense of intoxication. (*Hayes*, 173 Ill. App. 3d at 1048, 527 N.E.2d at 1346; *People v. Cheung* (1980), 83 Ill. App. 3d 1048, 1052, 404 N.E.2d 558, 561.) The condition of intoxication must be so extreme as to negate the mental state required for the crime. (*Cheung*, 83 Ill. App. 3d at 1052, 404 N.E.2d at 561.) While evidence was presented at trial of defendant's drinking and intoxicated behavior, no evidence of his mental processes being so impaired by alcohol as to suspend all reason or render him incapable of forming the requisite intent was ever presented. Rather, evidence was presented defendant was sober enough to tell Lewis he was not going to pay for the damages to his truck, to follow Lewis and challenge him to fight hand to hand, to swing the pipe over his head to ward off any possible attacks, and to hit Lewis twice with the pipe and flee the scene. Under such circumstances, the trial court did not err in refusing to tender defendant's defense instruction on voluntary intoxication. *Hayes*, 173 Ill. App. 3d at 1048, 527 N.E.2d at 1346-47.

For his third point on appeal, defendant contends any sentence of more than the minimum term of incarceration is excessive in light of the circumstances of the case and defendant's potential for rehabilitation, and therefore constitutes an abuse of the court's discretion. As we have stated repeatedly, we will not substitute our judgment for that of the trial court simply because we may have imposed a different sentence had the sentencing function been delegated to us. We simply will not disturb the sentence imposed by the trial court unless it constitutes a great departure from the spirit and purpose of the law. (See *People v. Carlson* (1980), 79 Ill. 2d 564, 587, 404 N.E.2d 233, 243; *People v. Generally* (1988), 170 Ill. App. 3d 668, 677, 525 N.E.2d 106, 111.) Not only must the court provide for the possibility of a defendant's rehabilitation, it must also fashion a sentence which will protect the interests of society based upon the particular circumstances present in each individual case. (See *Reese*, 121 Ill. App. 3d at 989-90, 460 N.E.2d at 454. See also *People v. Saldivar* (1986), 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, 1143.) While the classification of a crime determines the sentencing range, the severity of the sentence for that crime depends upon the degree of harm caused to the victim. (*Saldivar*, 113 Ill. 2d at 269, 497 N.E.2d at 1143.) Here, defendant caused serious harm to the victim. Not only was Lewis hospitalized for over a month with head injuries, he has lost most of his hearing in his right ear and still experiences headaches, dizziness, and shakiness in high places. In light of the seriousness of the harm caused, we cannot say defendant's sentence is so excessive as to require modification. Moreover, even though the sentence imposed is in excess of the

statutory minimum of three years, it also is far less than the statutory maximum of seven years' imprisonment. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1.) Clearly the trial court did take into consideration defendant's list of factors in mitigation in fashioning his sentence. (See *People v. Scott* (1989), 180 Ill. App. 3d 418, 425, 535 N.E.2d 1113, 1118.) Again, we find no abuse of the trial court's discretion in this sentence.

■ Defendant's final argument on appeal is that the order of restitution of $39,158.71 imposed on him is unreasonable. This time we agree with defendant's contention. When restitution is ordered, the amount must be reasonable and just. (See *People v. Rupert* (1986), 148 Ill. App. 3d 27, 29, 499 N.E.2d 93, 95; *People v. Knowles* (1980), 92 Ill. App. 3d 537, 540, 414 N.E.2d 1322, 1325.) The purpose of restitution is "frustrated when the restitutionary order imposes an impossible financial burden." (*Knowles*, 92 Ill. App. 3d at 540, 414 N.E.2d at 1325.) Here that purpose is frustrated. Defendant is the sole support for his wife and three children, and at his last job earned $7.35 an hour while working 35 hours per week. Even if defendant can return to this job upon being released from prison, he clearly will not be able to manage the hefty payments the trial court's order of restitution will require. Quite simply, the amount of restitution ordered will impose an impossible financial burden on defendant and his family. We therefore believe the better approach in this instance would be to establish a fixed percent of defendant's net income as the appropriate method for paying restitution. The percentage approach, being self-adjusting, will reflect future changes in defendant's income without requiring later motions and hearings to modify the amount of his payments. (See *Rupert*, 148 Ill. App. 3d at 30, 499 N.E.2d at 96; *Knowles*, 92 Ill. App. 3d at 540-41, 414 N.E.2d at 1325-26.) Accordingly, we remand the restitutionary portion of defendant's sentence for redetermination as to a more appropriate amount of or method of paying restitution.

For the aforementioned reasons, we affirm the judgment of the circuit court of Massac County excepting the order of restitution. We remand the order of restitution for redetermination in accordance with the dictates of our opinion.

Affirmed in part and reversed in part and remanded.

GOLDENHERSH, P.J., and HARRISON, J., concur.