THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEREK CROSBY, Defendant-Appellant.

First District (3rd Division)   No. 1—89—1479

Opinion filed March 24, 1993.

Rita A. Fry, Public Defender, of Chicago (Tina Liebling, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Mary Brigid Kenney, and Donald T. Lyman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Derek Crosby, was convicted of three counts of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1) and one count of attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4, 9—1) in a jury trial. Following a death penalty hearing, the trial court determined that mitigating factors existed precluding the imposition of a death sentence and sentenced defendant to natural life imprisonment on the murder convictions to run concurrently with an extended term of 60 years' imprisonment on the attempted murder conviction. On appeal, defendant contends that (1) the trial court erred when it refused to instruct the jury on the affirmative defense of voluntary intoxication; (2) the trial court improperly excused prospective jurors who disagreed with the death penalty; (3) he was denied effective assistance of counsel; and (4) the sentence of natural life imprisonment violates the United States and Illinois Constitutions. We affirm.

On August 1, 1987, Chicago police officers responded to a disturbance at 5430 West Madison Street in Chicago. At the scene, police discovered the slain bodies of Sidney Crosby, Lois Crosby and Ethyl Smith, all of whom had died of multiple stab wounds. Vernita Crosby, the daughter of Sidney and Lois Crosby, also received multiple stab wounds but survived the incident.

Defendant, the son of Sidney and Lois Crosby, appeared at Loretto Hospital complaining of minor lacerations on his left hand and muttering that someone had killed his mother. When police detectives arrived at the hospital to question defendant, he initially told them that a man who sells him cocaine stabbed his mother. After detectives informed defendant that his sister Vernita was still alive, defendant admitted his involvement in the murders and gave the following sworn statement to police:

> "Sometime during the early morning hours of August 1st, *** Vernita and [defendant] got into an argument because [defendant] sold Vernita's VCR. [Defendant] stated Vernita grabbed a knife and that he too picked up a knife and they began slashing at each other. Lois Crosby, [defendant] and Verni-

ta's mother, stepped in between to break it up and [defendant] stuck her a couple times. [Defendant] stated he cut his mother in the side by her breast and in the stomach area. [Defendant] said his father, Sidney Crosby, came from behind and grabbed him by his left shoulder. [Defendant] had the knife in his right hand and turned around and cut Sidney Crosby a couple times. [Defendant] then chased his sister into the front. [Defendant's] aunt, Ethyl Smith, was pounding on the door. Vernita opened the door and ran out past Ethyl Smith who was standing at the door. [Defendant] may have cut Ethyl Smith because he was still fighting with Vernita."

A toxicology screening ordered by treating emergency room physicians indicated that defendant's blood-alcohol level was .08, slightly below the presumptive level of alcohol intoxication. The test, however, did not detect the presence of cocaine or phencyclidine (PCP). Following a jury trial, defendant was found guilty of three counts of first degree murder and one count of attempted murder. This appeal followed.

■■ Defendant first contends that the trial court erred when it refused to instruct the jury on the affirmative defense of voluntary intoxication where the evidence presented at trial demonstrates that defendant was in a PCP-induced psychosis when he committed the murders in question. Voluntary intoxication is an affirmative defense which excuses or mitigates the conduct charged if the intoxication is so extreme as to suspend the power of reason and render the defendant incapable of forming the requisite intent of the crime charged. (*People v. Leger* (1991), 208 Ill. App. 3d 333, 338, 567 N.E.2d 68, 71.) While only slight evidence of intoxication is required in order for the trial court to instruct the jury on voluntary intoxication, it is within the discretion of the trial court to refuse to tender an instruction where there is insufficient evidence for a jury to reasonably find that the defendant was intoxicated. (*People v. Reece* (1992), 228 Ill. App. 3d 390, 394-95, 591 N.E.2d 993, 996-97.) After reviewing the record in its entirety, including defense counsel's offer of proof and the testimony of Drs. Gniadecki, Roskam, Ganellen, Kaplan and O'Donnell, we find there is insufficient evidence to support a finding that defendant was under the influence of PCP at the time he committed the murders. Accordingly, the trial court did not err when it refused to tender a voluntary intoxication instruction to the jury.

■■ Defendant next contends that he is entitled to a new trial because the trial court improperly excused prospective jurors who disagreed with the death penalty in violation of *Witherspoon v. Illinois*

(1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, and its progeny. It is clear, however, that the proper remedy for a *Witherspoon* violation is to vacate an imposed death sentence rather than reversal of the underlying conviction. (*Morgan v. Illinois* (1992), 504 U.S. 719, 739 n.11, 119 L. Ed. 2d 492, 509 n.11, 112 S. Ct. 2222, 2335 n.11; *Witherspoon*, 391 U.S. at 522 n.21, 20 L. Ed. 2d at 785 n.21, 88 S. Ct. at 1777 n.21; *People v. Emerson* (1987), 122 Ill. 2d 411, 437, 522 N.E.2d 1109, 1119.) Nevertheless, our review of the record here reveals that the trial court did not err when it excused prospective jurors for cause after determining that their views towards the death penalty would prevent or substantially impair the performance of their duties as jurors. (*Morgan*, 504 U.S. at 728-29, 119 L. Ed. 2d at 502-03, 112 S. Ct. at 2229-30; see also *Wainwright v. Witt* (1985), 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52, 105 S. Ct. 844, 852.) Accordingly, defendant's contention that he is entitled to a new trial based on a *Witherspoon* violation is not supported by fact or law.

■ Defendant next contends that he failed to receive effective assistance of counsel in violation of the United States and Illinois Constitutions. Defendant, relying on *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, and *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039, first argues that defense counsel failed to subject the prosecution's case to meaningful adversarial testing when she stated in her opening argument:

> "This is not a case about a planned, premeditated or intentional crime. This is not a case about a cold heart, about benevolence or about evil. It's a case about weakness, about drug addiction, about drugs, about crazed behavior, and it's a case about tragedy.
>
> [Defendant] did kill his mother, his father, his aunt. He did stab his sister. He is guilty, but he is guilty of second degree murder, not first."

Assistance of counsel is not rendered *per se* ineffective when defense counsel concedes a client's guilt to a lesser included offense of the crime charged where evidence of the client's guilt is overwhelming and a vigorous defense is presented to the crime charged. (*People v. Johnson* (1989), 128 Ill. 2d 253, 269, 538 N.E.2d 1118, 1125.) Rather, each allegation of ineffective assistance of counsel must turn on its own particular facts. (*People v. Brown* (1990), 197 Ill. App. 3d 907, 914, 557 N.E.2d 199, 204.) In the present case, the evidence presented at trial, including defendant's sworn statement to police and Vernita's testimony that defendant stabbed their father, their mother, their aunt and then her as she tried to escape, overwhelmingly dem-

onstrates that defendant committed the murders in question. Moreover, the record reflects that defense counsel vigorously presented the legitimate affirmative defense of voluntary intoxication to the first degree murder charge here. (See *People v. Leger* (1992), 149 Ill. 2d 355, 387-88, 597 N.E.2d 586, 600-01; *People v. Kyse* (1991), 220 Ill. App. 3d 971, 974, 581 N.E.2d 285, 287 (voluntary intoxication can be raised as an affirmative defense to first degree murder).) The fact that the evidence here was insufficient to establish this defense does not render defense counsel's representation of defendant ineffective. See *People v. Potthast* (1991), 219 Ill. App. 3d 714, 721, 579 N.E.2d 1027, 1032.

Defendant next argues that he was denied effective assistance of counsel when defense counsel failed to present a closing argument. Only egregious errors of judgment, trial tactics or strategy by defense counsel will provide a basis for a finding of ineffective assistance of counsel. (*People v. Davis* (1992), 228 Ill. App. 3d 123, 127, 592 N.E.2d 464, 467.) After reviewing the record in its entirety, we find that defense counsel's failure to make a closing argument after the trial court refused to give a voluntary intoxication instruction was not an egregious error of judgment or strategy. See *People v. Arnett* (1991), 217 Ill. App. 3d 626, 636, 577 N.E.2d 773, 778-79.

Defendant further argues that he was denied effective assistance of counsel when defense counsel withheld evidence of PCP intoxication until the death penalty hearing. Because we have determined that the cumulative evidence propounded in the present case, including the evidence presented at the death penalty hearing, was insufficient to warrant a voluntary intoxication instruction, defendant was not prejudiced by defense counsel's actions here. Accordingly, applying the tests enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039, we cannot say that defendant was denied his right to effective assistance of counsel as guaranteed by the United States and Illinois Constitutions.

■ Defendant finally argues that his sentence of natural life imprisonment violates the due process and equal protection clauses of the United States and Illinois Constitutions and the prohibition against cruel and unusual punishment set forth in the United States Constitution. (U.S. Const., amends. VIII, XIV; Ill. Const. 1970, art. I, §2.) This argument has repeatedly been rejected by this court. (See *People v. Carreon* (1992), 225 Ill. App. 3d 133, 148, 587 N.E.2d 532, 542-43.) Thus, for the reasons previously set forth in *Carreon*, we find that section 5—8—1(a)(1) of the Unified Code of Corrections does not

violate the United States or Illinois Constitution. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.