THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE PAVELICH, Defendant-Appellant.

Third District   No. 78-308

Opinion filed September 28, 1979.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant George Pavelich appeals from a revocation of the three-year term of probation which had been imposed in March of 1977 after he plead guilty to a charge of burglary. The petition for revocation alleged that defendant committed a burglary by entering a building at 550 North Frontage Road without authority and with the intent to commit a theft on October 25, 1977.

At the probation revocation hearing, the first witness called by the State was one of the owners of the building who testified that the building was used as a veterinary hospital; that it was locked and no one had permission to enter between 8 p.m. October 24 and 8 a.m., October 25, 1977; and that a copy machine, a cash register, and an adding machine were taken from the building during those hours.

Officer James Pritchard of the Bolingbrook police department testified that he was called to the veterinary hospital early on the morning of October 25, 1977, and there observed that a south window had been broken and the office had been ransacked. Officer Michael Kraft testified that on October 27, 1977, he proceeded to 202 Seabury, Bolingbrook, and having obtained consent to search the premises, he found in the garage the cash register and adding machine from the veterinary hospital. Officer Kraft further testified that Phillip NiCastro resided at 202 Seabury.

NiCastro, after being granted full immunity, became the State's final witness. NiCastro testified that he first learned of the hospital burglary from defendant on October 25 when he discussed this matter in defendant's bedroom where a cash register and adding machine were located. Defendant stated that he had kicked out a window of the hospital, removed the cash register and adding machine from the building, and dragged the items home as they were too heavy to carry. Defendant indicated that he was drunk at the time and did not know why he had taken the machines. Later that same afternoon, defendant informed NiCastro that his mother had told him she did not want stolen property in her house, so defendant and NiCastro placed the goods in a car. In the process the two men got into a fight after which defendant left, and NiCastro then took the machines to his garage.

NiCastro further testified that he was informed by his sister on

October 27 that the police had been to his residence and had taken the items from the garage. After NiCastro was arrested on October 27 or 28, he told the police that the stolen property was obtained from defendant, who had himself obtained it from someone else. NiCastro testified that he had lied to the police on October 28 as to the part about someone else to protect defendant who was a friend he had known for a long time. NiCastro admitted that he had been charged with the possession of stolen property upon his arrest and that he knew he might be charged with burglary and he knew the property in his garage was obtained in a burglary. NiCastro also admitted that he actually found out about the burglary on the night it occurred, being told by his own brother and not defendant. He stated, however, that he would not lie to protect himself or his brother from arrest. At this statement the trial judge registered some disbelief, since the witness testified earlier he had lied to protect defendant, but the witness explained that his brother would not commit burglary. NiCastro also testified that the police picked him up a second time. By then he knew that defendant had implicated him so he gave the police a tape-recorded statement which was consistent with his testimony except insofar as he later testified that he first learned of the burglary from his brother.

At the conclusion of the revocation hearing, defendant's probation was revoked. After defendant elected to be sentenced under the law in effect prior to February 1, 1978, he was sentenced to a term of imprisonment of not less than 18 months nor more than 54 months.

On review, the only issue presented is whether the State proved by a preponderance of the evidence that defendant committed the burglary which was the basis for the probation revocation. Defendant contends that the only evidence of his involvement was the uncorroborated testimony of an accomplice, which testimony was impeached.

In announcing his decision to revoke defendant's probation, the judge stated that, although there were reasons not to believe NiCastro, the judge believed the witness because his testimony was straightforward and convincing. Defendant, on the other hand, argues that NiCastro's testimony was discredited by the grant of immunity, by his prior inconsistent statements to the police, by the malice he might have felt because defendant implicated him in the burglary, and by the fact that he had reason to hope for leniency from the State.

■■ One of the conditions of probation is a requirement that penal statutes not be violated, and where a violation of a penal statute is the basis for a revocation of probation, such violation must be established by a preponderance of the evidence. (*People v. White* (1977), 51 Ill. App. 3d 155, 366 N.E.2d 491.) There is no requirement, however, that the

evidence be clear and convincing. *People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721; *People v. Giacinti* (1976), 44 Ill. App. 3d 699, 358 N.E.2d 934.

■■■ Even in criminal proceedings, the uncorroborated testimony of an alleged accomplice, if that testimony satisfies the trier of fact beyond a reasonable doubt, may be sufficient to support a conviction. (*People v. Hermens* (1955), 5 Ill. 2d 277, 125 N.E.2d 500; *People v. Lambert* (1978), 60 Ill. App. 3d 280, 376 N.E.2d 790.) The promise of a reward in return for testifying would not alone necessarily destroy the alleged accomplice's testimony, although such testimony, to be accepted, must carry with it an absolute conviction of its truth. (See *People v. Williams* (1976), 65 Ill. 2d 258, 357 N.E.2d 525.) Because of the inherent weakness of accomplice testimony, the trier of fact, in weighing the credibility of the witness, should give great weight to direct contradiction or a material corroboration from some other source. *People v. Sheridan* (1977), 51 Ill. App. 3d 963, 367 N.E.2d 422.

■■ ■ It has long been the province of the trier of fact to determine the effect of prior inconsistent statements upon the credibility of a witness since the fact of an inconsistent extrajudicial statement does not, *per se*, destroy the probative value of testimony, and the trier of fact may accept the credibility of the witness notwithstanding the impeaching inconsistent statement. (*People v. Springfield* (1975), 34 Ill. App. 3d 48, 339 N.E.2d 334; *People v. Hubbard* (1972), 4 Ill. App. 3d 729, 281 N.E.2d 767.) A witness can be rehabilitated if he explains his prior inconsistent statements and the circumstances under which they were made. *People v. Hicks* (1963), 28 Ill. 2d 457, 192 N.E.2d 891.

■ In the case at bar, we think it significant that NiCastro did not vacillate in his testimony nor did he at any time deny defendant's involvement. The prior statement, which defendant claims impeaches the witness, does not totally exculpate defendant. Furthermore, the witness explained that at the time of his first statement to the police he was trying to protect his friend. After defendant implicated him, there was no longer any reason to protect defendant. The trial judge referred to this reasoning as a factor in deciding to believe the witness.

Because the judge hearing the evidence is in a much better position than is a reviewing court to weigh the testimony of the witnesses, a reviewing court will substitute its judgment for that of the trial court in a revocation proceeding only when the judgment of the trial court is contrary to the manifest weight of the evidence. (*People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721; *People v. White* (1977), 51 Ill. App. 3d 155, 366 N.E.2d 491.) Based upon the facts of this case, we cannot say that the revocation of defendant's probation was contrary to the manifest weight of the evidence.

Only two of the cases cited by defendant involve the revocation of probation. *People v. Seymour* (1977), 53 Ill. App. 3d 367, 368 N.E.2d 1018, and *People v. Arroyo* (1969), 112 Ill. App. 2d 480, 251 N.E.2d 409, held that proof of a violation of probation, in order to support a revocation, be clear and convincing, but this standard has been expressly rejected by the Illinois Supreme Court. *People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721.

Accordingly, the order of the Circuit Court of Will County revoking the probation of George Pavelich and sentencing him to a term of imprisonment of not less than 18 months nor more than 54 months is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.