THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN EDWARD PECKA, Defendant-Appellant.

Fifth District   No. 82—426

Opinion filed July 13, 1984.

Randy E. Blue and Patricia McMeen, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robin Todd, State's Attorney, of Louisville (Kenneth R. Boyle, Stephen E. Norris, and Karen L. Stallman, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant John E. Pecka was found guilty of murder following a trial by jury in the circuit court of Clay County. Defendant was sentenced to 30 years' imprisonment. The issues presented on appeal are (1) whether defendant was denied a fair trial by the court's failure to provide the jury with the proper instruction regarding the affirmative defense of voluntary intoxication (Illinois Pattern Jury Instruction (IPI), Criminal, No. 24—25.02A (2d ed. 1981)); (2) whether the evidence at trial was sufficient to prove defendant guilty beyond a reasonable doubt; (3) whether defendant was unfairly prejudiced by certain statements of the prosecuting attorney during closing argument; and (4) whether the trial court imposed an excessive sentence upon defendant.

On the evening of December 16, 1981, defendant attended a party at the mobile home of his friends Marie Kuhlman and Randy Meares. Four others attended: Scott Merritt, Donald McElyea, Robert Thompson, and Richard Gregory. During the course of the evening, defendant displayed a .38 caliber pistol. Eventually, defendant held the pistol as it fired into Scott Merritt's head, killing him.

Marie Kuhlman testified that she was standing in the kitchen area of the mobile home when the shot was fired. She looked up and observed defendant in a crouched position. Defendant was holding the gun. Scott Merritt was on the floor. She heard defendant say, "Oh, my God, I don't know what happened. It just went off." Ms. Kuhlman testified that defendant and Robert Thompson had experienced a disagreement earlier in the evening, but had reconciled after Randy Meares intervened.

Randy Meares stated that at the time the shot was fired, he was conversing with Richard Gregory. After the shot, Mr. Meares observed defendant holding the gun. He testified that there had been no argument between defendant and Scott Merritt. He stated that, when defendant had been asked what had happened, defendant replied, "I don't know." Richard Gregory agreed that there had been no argument between defendant and Scott Merritt.

Robert Thompson testified that defendant had in fact argued with Scott Merritt prior to the shooting. Merritt told defendant to "put the gun away." Defendant stated that such a response constituted "fighting words." Both men stood up, defendant pointed the gun at Merritt, and fired.

Donald McElyea also stated that defendant and Merritt had disagreed prior to the shooting and that he saw defendant rise from his chair, take aim at Merritt, and fire.

Defendant testified that he remembered arriving at the party, but remembered little or nothing of events after the group had moved, early in the evening, to the dining room area where the shooting occurred. He remembered the sound of the shot, someone lying on the floor, and saying to Randy Meares that he should call an ambulance and the police. Dr. Mary Montgomery, a psychiatrist, testified that she had examined defendant over an eight-day period and administered various tests. She offered her expert opinion that defendant was suffering from an alcoholic blackout on the evening of the shooting. Dr. Leon Jackson, a psychologist, and Dr. Richard Herndon, a specialist in internal medicine, also examined defendant, and offered contrary expert opinions. Each testified that, in his opinion, defendant did not experience an alcoholic blackout on the evening in question. There was conflicting testimony among the experts regarding the precise nature and length of alcoholic blackouts.

The jury received Illinois Pattern Jury Instruction (IPI), Criminal, No. 24—25.02 (2d ed. 1981) (definition of voluntary intoxication). The jury did not receive IPI Criminal No. 24—25.02A (issues in defense of voluntary intoxication), and this instruction was not offered to the court by defense counsel. The jury received the following instruction regarding the elements of murder:

"To sustain the charge of murder, the State must prove the following propositions:

First: That the defendant performed the acts which caused the death of Scott Allen Merritt; and

Second: That when the defendant did so, he knew that his act would cause death or great bodily harm to Scott Allen Merritt; or he knew that his acts created a strong probability of death or great bodily harm to Scott Allen Merritt.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

■■ It is well established that a party may not appeal a trial court's failure to give an instruction unless the complaining party tendered the instruction at trial. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180, 415 N.E.2d 1027.) Moreover, issues not raised in a party's post-trial motion are effectively waived for purposes of appellate review. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 543, 440 N.E.2d 1248.) The interests of justice nevertheless require that the rule of

waiver be modified in criminal cases when it is necessary to insure the fundamental fairness of the trial. (*People v. Roberts* (1979), 75 Ill. 2d 1, 15, 387 N.E.2d 331.) "Fundamental fairness includes *** seeing to it that certain basic instructions, essential to a fair determination of the case by the jury, are given. Instructions on the elements of the offense are among these basic instructions, and we have recognized that the trial court has responsibility for ensuring that they are given." *People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861.

It is our judgment that the failure of the trial court to tender the pattern instruction regarding the affirmative defense of voluntary intoxication did not misinform, confuse, or otherwise impair the jury in such a manner as to affect the fundamental fairness of defendant's trial. The jury was properly informed both with regard to the definition of voluntary intoxication and the elements of murder. Essential among the elements of murder was that defendant knew his act would either cause death or great bodily harm to the victim or create the strong possibility of death or great bodily harm. The omission of the language of IPI Criminal No. 24—25.02A, "[t]hat at the time of the offense, the defendant was capable of acting knowingly," did not render the instruction substantially defective, since the language would not have served to delineate an additional element the State was required to prove, but merely to reiterate an element the State was required to prove as part of the necessary propositions of the crime of murder. In other words, a finding that defendant knew his act would either cause or create the possibility of death or great bodily harm would necessarily imply that defendant was capable of acting knowingly. It is essentially on this basis that the instant case is distinguishable from those cited by defendant, all of which involve the failure of a trial court to properly instruct a jury in a murder case on the affirmative defense of self-defense, and not, as here, on the affirmative defense of voluntary intoxication.

When the affirmative defense of self-defense is raised in a murder case, the burden is on the State to prove beyond a reasonable doubt an element extrinsic to the statutory definition of murder—*i.e.,* that the defendant was not justified in the force he or she employed. In contrast, the affirmative defense of voluntary intoxication raised in the instant case did not require the State to prove an element extrinsic to the definition of murder upon which the jury was adequately informed. The error involved in the court's failure to tender the Illinois pattern instruction was not, therefore, of sufficient magnitude to necessitate a modification of the waiver rule. Defendant's claim of error regarding the trial court's failure to instruct the jury on the State's

burden of disproving his defense of voluntary intoxication was thus waived by defendant's failure to tender the proper instruction and to preserve the issue in his post-trial motion for a new trial. *People v. Woollums* (1981), 93 Ill. App. 3d 144, 151, 416 N.E.2d 725.

■ Defendant's contention that he was not proved guilty beyond a reasonable doubt is premised upon purported inconsistencies in the statements of the witnesses at the scene, and upon the alleged insufficiency of the testimony of the State's expert witnesses to sustain the jury's finding that defendant was not suffering from an alcoholic blackout. Neither premise, in our judgment, is supported by the record. Defendant argues, in effect, that the testimony offered by Donald McElyea and Robert Thompson was so replete with inconsistencies and contradictions that it was inherently suspect, and that the testimony of Randy Meares, Marie Kuhlman, and Richard Gregory provided data insufficient to support a reasoned conclusion of defendant's guilt. Even assuming such inconsistent testimony as defendant alleges, inconsistent statements do not of necessity invalidate a witness' testimony. (*People v. Pavelich* (1979), 76 Ill. App. 3d 779, 782, 395 N.E.2d 202.) It is properly the function of the jury, as trier of fact, to resolve conflicting and inconsistent testimony by determining the credibility of the witnesses and the inferences to be drawn from the evidence as a whole. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) There was no question at trial that defendant held the gun at the time it discharged into the victim's head. The only material issue in dispute was whether defendant acted with the knowledge that he was likely to cause death or great bodily harm to the victim. The testimony offered by the various witnesses at the scene, even though inconsistent on certain points, provided a sufficient basis from which a jury could conclude beyond a reasonable doubt that defendant acted with such knowledge. In a similar manner, the expert opinions of Dr. Jackson and Dr. Herndon were sufficient to support the same finding, notwithstanding the conflicting opinion of Dr. Montgomery.

Defendant's contention that certain comments by the prosecuting attorney during closing argument were improper has been waived by defendant's failure to object at trial to any of the allegedly improper statements. *People v. Edwards* (1973), 55 Ill. 2d 25, 35, 302 N.E.2d 306.

■ Defendant's final allegation that the trial court abused its discretion by imposing on defendant a prison sentence of 30 years is not supported by the record, which indicates that the trial court explicitly considered the presentence investigation report, evidence submitted

at the sentencing hearing, the argument of counsel, and defendant's own statement to the court. "[T]he trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) The utter senselessness of defendant's act, noted by the trial judge, precludes a finding that the sentence imposed in the instant case was an abuse of the trial court's discretion.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

JONES and KASSERMAN, JJ., concur.