THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN PECKA, Defendant-Appellant.

Fifth District   No. 5—87—0155

Opinion filed May 1, 1989.

Daniel D. Yuhas and Thomas M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

Sherri L.E. Tungate, State's Attorney, of Louisville (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

The defendant, John Pecka, appeals from the trial court's denial of his amended petition for post-conviction relief in a judgment entered February 1, 1987. On July 19, 1982, defendant was sentenced to 30 years' imprisonment for murder. The conviction and sentence were affirmed on direct appeal. (*People v. Pecka* (1984), 125 Ill. App. 3d 570, 466 N.E.2d 404.) In the direct appeal four issues were presented for review: (1) whether defendant was denied a fair trial by the court's failure to provide the jury with the proper instruction concerning the affirmative defense of voluntary intoxication; (2) whether the evidence at trial was sufficient to prove defendant guilty beyond a reasonable doubt; (3) whether defendant was unfairly prejudiced by certain of the prosecutor's statements made during closing argument;

and (4) whether the sentence imposed was excessive.

On August 17, 1983, the defendant filed *pro se* a petition for post-conviction relief, which he later withdrew voluntarily on the advice of appointed counsel because his direct appeal had not yet been heard. On July 13, 1984, the opinion in the direct appeal was filed in this court. On August 20, 1984, defendant filed *pro se* a petition for post-conviction relief, which was subsequently amended by appointed counsel and filed on May 13, 1985. In the amended petition defendant sought to have his murder conviction reversed and the cause remanded for a new trial principally on the basis of the denial of his constitutional rights of due process and the effective assistance of appellate counsel. The State moved to deny and to dismiss the amended petition. The trial court dismissed the amended petition but subsequently allowed the defendant's motion to reconsider the order of dismissal. Following a hearing on December 4, 1986, the trial court entered judgment on February 1, 1987, denying the amended petition. From that judgment this appeal has been taken.

In the amended petition the defendant alleged that the trial court had denied him his constitutional rights of due process and effective assistance of counsel "when it denied defense counsel the right to introduce into evidence the blood alcohol level of the deceased for the purpose of establishing the defense of accident," thereby precluding him from "arguing a reasonable theory of innocence." He alleged further in the amended petition that his constitutional rights had been violated by certain remarks of the trial court that "demeaned defense counsel in the jury's presence, and unnecessarily implied to the jury that defense counsel was both delaying the trial and imposing upon the Court and the jury." The defendant alleged as well that the trial court violated his constitutional rights by "[f]orcing the jury to deliberate from 1:00 p.m. on June 16, 1982, until 2:50 a.m., June 17, 1982," thereby placing "an undue physical and emotional burden upon the jury and den[ying] Petitioner his Fifth Amendment Right to due process of law and his Sixth Amendment Right to a fair and impartial jury." With regard to this contention the defendant stated further:

> "The early hours of the morning presented an abnormal and unreasonable time and situation for persons unaccustomed to them to make a decision as important as a verdict in a murder trial. The pressure was abnormal and unreal and due only to the Court's private time constraint."

The defendant alleged "a conflict with the Mt. Vernon office of the State Appellate Defender's Office, or at least one which would lend the appearance of impropriety to his representation by that office so

that the Sixth Amendment, fundamental fairness, and due process preclude this Court from considering issues raised in his appeal as being barred by the doctrines of res judicata or collateral estoppel." Several extensive exhibits were attached to the amended petition. The defendant made numerous other allegations pertaining to the denial of his constitutional rights that are not addressed in this appeal; hence, we need not discuss them.

At the hearing on the amended petition on December 4, 1986, the court heard argument, but no testimony was proferred. Counsel newly appointed for the defendant stressed at this hearing that, although the defendant had indicated to appellate counsel that he had wanted certain of these issues raised in the direct appeal, appellate counsel did not raise them.

In a nine-page judgment the trial court considered all the allegations of the amended petition. With regard to the defendant's contention that he was denied the right to present a full defense because the trial court had excluded evidence of the victim's alleged intoxicated condition, the court stated:

> "Clearly, this issue could have been presented to the Appellate Court on defendant's direct appeal. It was not. Nor is the failure so to do a matter of fundamental fairness. The relevance of the victim's alleged intoxicated state to the issues at trial was, at very best, tangential. It was, therefore, not a violation of defendant's constitutional rights to refuse to allow it into evidence even assuming, ad [sic] arguendo, that it was error not to do so."

Concerning the defendant's allegations pertaining to improper remarks of the trial court and the inordinate length of the jury's deliberations, the court observed:

> "These related issues could have been presented on direct appeal but were not. Nor did defendant's privately retained trial counsel perceive the conduct of the trial court in these matters to be improper. A review of those portions of the transcript of proceedings cited by defendant in support of these arguments establishes conclusively that, as a factual matter, no such abuses occured [sic]. The conduct of the trial judge towards defense counsel was proper. Any time constraints were in the interest of judicial economy and did not impinge upon the right of all parties to a full and fair trial. The jury's deliberations into the night were not so long or late as to raise any inference that a verdict was forced contrary to the decision of any one or more of the jurors."

In this appeal the defendant presents three issues for our review; with respect to each of these issues he claims ineffective assistance of appellate counsel in the direct appeal for failure to raise each issue at that time: (1) whether the defendant was denied his constitutional right to present his defense "where the trial court refused to admit into evidence on irrelevance grounds proof of the victim's intoxication, where such evidence was relevant to Mr. Pecka's theory that the shooting was accidental and that the victim's act of falling into Mr. Pecka caused the revolver to discharge"; (2) whether defendant was denied the right to a fair trial "where the trial court criticized defense counsel in the presence of the jury for the timing of a recess in the defendant's case, where the court's hostility and attempt at judicial humor served only to influence the jury and prejudice Mr. Pecka"; and (3) whether the trial court abused his discretion "in compelling the jury to deliberate from 1:00 p.m. to 2:50 a.m., where a period of deliberation of that length was unreasonable, thereby rendering that verdict a product of an improper coercive influence, and where the court's discretion was exercised with a view toward the expeditious conclusion of trial rather than ensuring that the jury's verdict was reached through voluntary agreement."

During the pendency of this appeal the defendant has sought to supplement the record on appeal. He has filed two motions in that regard, one to supplement the record on appeal and another to amend his motion to supplement the record on appeal. The State has filed objections to both motions, which have been taken with the case. In his motion to supplement the record on appeal defendant seeks to include in the record a copy of a letter from him to appellate defense counsel in the direct appeal dated May 5, 1983, in which he refers to a "list of issues in my case," together with a copy of the list, which was, he says, originally attached to the letter. The list and letter, he states, were sent to appellate counsel prior to the filing of his brief in the direct appeal. A copy of the letter in question is already included in the record on appeal. However, neither the original nor a copy of the list is included in the record on appeal. The list contains 11 items, of which the eighth and ninth correspond to the first and third issues now presented for review. In its objection to the motion the State argues, *inter alia*, that there is nothing to show that the copy of the list with which he wishes to supplement the record is the same list to which defendant refers in the letter of May 5, 1983.

In his motion to amend his motion to supplement the record on appeal defendant seeks to supplement the record with the original letter of May 5, 1983, and the original list, which, he states in an affida-

vit, he stapled together and sent to appellate defense counsel in the direct appeal. In this second motion defendant asserts that the list in question was

> "never presented to the circuit court that heard the post-conviction proceedings. Mr. Pecka only moves to supplement the present record with the 'list' for the limited purpose of informing this court of what was in possession of direct appellate counsel at the time Mr. Pecka's direct appellate brief was prepared and filed, and especially to give context to the [copy of the] letter [of May 5, 1983,] found at C. 468 of the record on appeal."

The State objects to the inclusion of the list because it places before the appellate court evidence not before the trial court, where its authenticity ought to have been established. However, inasmuch as the State cannot be prejudiced by the inclusion of these items in the record on appeal, we hereby grant the defendant's two motions previously taken with the case.

With regard to the first issue defendant now presents for review, he maintains that the proof of the victim's intoxication, which he sought to introduce into evidence at trial, was relevant for the purpose of proving his defense of accident and that the court's refusal to admit this evidence denied him the right to present his defense fully. On the evening of December 16, 1981, the defendant was at the mobile home of Marie Kuhlman and Randy Meares. Four other persons were present, including the victim, Scott Merritt. On the evening in question, defendant was carrying a .38 revolver, which, as he held it, discharged into the head of the victim, killing him. Evidence was conflicting as to whether the defendant and the victim had argued just prior to the discharging of the gun. Randy Meares testified that the defendant and the victim had not argued. This witness stated that at the time of the shooting more than one conversation was being carried on by the persons present. He said further that, when asked immediately after the shooting what had happened, the defendant responded, "I don't know." Prior to the shooting the defendant was seated. The witness did not see the defendant when the shot was fired but, after hearing it, turned to look. He described the defendant's position immediately after the shot was fired as follows: "Just like someone had put their arms on a chair and come up. He was still kind of bent over like he hadn't fully risen yet." The witness testified that the mobile home was not level, "off probably an inch or more," sloping toward the northwest corner where, according to the defendant in his brief, the defendant was seated, although the record is not

clear as to the defendant's precise location. Marie Kuhlman described the defendant's position just after the shot was fired as "a crouched position like he was just standing up." At the time the shot was fired she was cooking; when she heard it, she looked up. Immediately after the shooting she heard defendant say, "Oh, my God, I don't know what happened. It just went off." One of the persons present at the time of the shooting, Richard Gregory, testified that he did not hear any argument or dispute between the defendant and the victim just prior to the shooting, at which time he was seated two to three feet from the defendant. This witness appears not to have observed the defendant or the victim at the time the weapon discharged.

One of the persons present when the shooting occurred, Robert Thomson, testified that while the defendant and victim were both seated, just prior to the shooting, the defendant had told the victim to step into the kitchen, that the victim had told the defendant to "put the gun away," and that the defendant had responded, "Them are fighting words." During this conversation, the witness stated, the victim got up and moved away from the defendant toward the witness. At the conclusion of the conversation just described, the defendant stood up, moved toward the victim, held the gun, which he had just taken from a shoulder holster, to the head of the victim and pulled the trigger. He estimated the distance between the gun when it discharged and the head of the victim as about six inches but had not been able to see the end of the gun because of his position with regard to the victim at the time. The witness was impeached by a prior inconsistent statement given about two hours after the shooting occurred in which he indicated to police that, after the victim had told the defendant to take off his gun, the defendant had said "all right," and had pulled out the gun, which, when he did so, "went off." Another of the persons present when the shooting occurred was Donald McElyea, whose account of the events associated with the shooting was like that of Robert Thomson at trial. Donald McElyea testified that after the defendant pulled the gun from the shoulder holster, he cocked it, pointed it at the victim, and "[s]hot him." This witness testified that after the shot was fired, the victim stumbled and fell to the floor. He testified to a "gap" between the gun and victim's head when the gun discharged, but he was unsure of the distance involved.

The defendant was able to recall almost nothing of the events associated with the shooting. Evidence was conflicting as to whether the defendant had experienced an alcoholic blackout on the evening of the shooting. The defendant had had training in firearms during a 240-hour police training course, in which he used a revolver, at the

Police Training Institute.

The pathologist who had performed an autopsy upon the victim's body testified that the bullet had entered the left cheek. The witness expressed the opinion, based upon the condition of the wound, that the muzzle of the gun was in contact with or extremely close to the victim's cheek when the shot was fired. James Kreiser, a forensic scientist specializing in firearms and tool mark examinations, testified that the "trigger pull" of the defendant's revolver was 11¾ pounds when the gun was not cocked and 3½ pounds when it was, that is, when the hammer had been pulled back. The witness discussed the safety mechanisms of this particular weapon, two of which were the amount of pressure required to pull the trigger and the need to pull the trigger in order to fire the gun. From his examination of the wound, this witness had determined that, when the weapon was discharged, the end of the barrel was in contact with the cheek of the victim.

The defendant sought to introduce into evidence the coroner's toxicology report pertaining to the blood-alcohol level of the victim. The trial court sustained the State's objection based on relevancy. In an offer of proof the coroner of Clay County, Joseph Cardasio, testified that the amount of alcohol shown to be in the victim's blood was 0.174. Defense counsel argued that the toxicology report was relevant "from the point of view if somebody is intoxicated, they may stumble or fall." Defense counsel took the position that "to deprive us of this report would deprive us from making a statement in final argument as to how we believe this actually occurred." Defense counsel argued further that the State's witnesses had testified that the gun when it discharged was "a distance" from the victim but that the "State's expert says the gun was in contact"; counsel concluded, "There is no question in my mind the witnesses didn't really see what happened. And if the witnesses didn't see what happened, they might not have seen Mr. Merritt stumble or fall." The trial court concluded: "I won't let you admit this on the point you made. Think it's clearly inadmissible. I don't think evidence is admissible solely for the purpose of establishing a basis for an argument to the jury. Don't think that is the test."

In his brief on appeal defendant argues that "[i]t is entirely likely that the gap [between the weapon and the victim's cheek] could have been closed by Merritt's stumbling or falling in the direction of Mr. Pecka's hand which contained the revolver and that the discharge occurred as Merritt's face actually struck the revolver, causing it to discharge." The slope of the trailer "toward the corner in which Mr.

Pecka was seated," defendant proposes, "might have been responsible for propelling Merritt toward the chair occupied by Mr. Pecka." With respect to this issue defendant contends that it may not be deemed waived for failure to raise it in the direct appeal because of appellate counsel's ineffective assistance in failing to raise the issue at that time.

Generally, issues which could have been raised in the appellate court, but which were not, are waived. (*People v. Krankel* (1985), 131 Ill. App. 3d 887, 476 N.E.2d 777.) However, the doctrine of waiver ought not to bar issues from consideration where the alleged waiver stems from incompetency of appointed counsel on appeal. (*People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005; *People v. Frank* (1971), 48 Ill. 2d 500, 272 N.E.2d 25.) The Post-Conviction Hearing Act (Act) (Ill. Rev. Stat. 1983, ch. 38, par. 122—1 *et seq.*) provides a proper vehicle for review of those issues as to which review by direct appeal has been unconstitutionally denied by deprivation of the right to appeal, the right to competent counsel on appeal, or the concept of fundamental fairness. (*People v. Frank*, 48 Ill. 2d 500, 272 N.E.2d 25.) Where necessary the Act may serve to vitiate the prejudice of waiver attendant upon incompetence of counsel on appeal, by serving as a vehicle for review of all directly appealable issues. (*People v. Frank*, 48 Ill. 2d 500, 272 N.E.2d 25.) Therefore, whether the defendant is entitled to review under the Act of the issue pertaining to the exclusion from evidence of the toxicology report of the victim's blood-alcohol level depends upon the determination of his allegation that failure to raise the issue on appeal constituted incompetence of his appointed counsel. See *People v. Frank*, 48 Ill. 2d 500, 272 N.E.2d 25.

There is no obligation of appointed counsel to brief every conceivable issue on appeal; nor is it incompetence for counsel to refrain from raising those issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. (*People v. Barnard*, 104 Ill. 2d 218, 470 N.E.2d 1005; *People v. Frank*, 48 Ill. 2d 500, 272 N.E.2d 25; *People v. Adams* (1987), 164 Ill. App. 3d 742, 518 N.E.2d 266; *People v. Bailey* (1986), 141 Ill. App. 3d 1090, 490 N.E.2d 1334; *People v. Krankel*, 131 Ill. App. 3d 887, 476 N.E.2d 777.) Further, in order to establish a claim of ineffective assistance of counsel, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246; *People v. Krankel*, 131 Ill. App. 3d 887, 476 N.E.2d 777.) Recently, in *People v. Caballero*

(1989), 126 Ill. 2d 248, 269-70, 533 N.E.2d 1089, 1096, the supreme court stated that the two-part *Strickland* standard (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052), which was adopted by our supreme court in *Albanese* with regard to claims of ineffectiveness of both retained and appointed trial counsel, applies

> "*a fortiori* to a claim that an appellate advocate chose the wrong issues or argued them ineffectively. Where the defendant maintains, for example, that his appellate attorney failed to argue a particular issue, he must show the failure to raise that issue was objectively unreasonable, as well as a reasonable probability that, but for this failure, his sentence or conviction would have been reversed."

In *Albanese* (104 Ill. 2d at 527, 473 N.E.2d at 1256), the court noted the guidelines set forth by the Supreme Court in *Strickland* for applying its two-component standard: " '[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' "

■ We have weighed the merits of the issue of the exclusion from evidence of the toxicology report pertaining to the victim's blood-alcohol level, which issue was fully briefed by counsel appointed in these proceedings. We conclude that the issue was not patently meritorious so that the failure of appellate counsel to raise the issue in the direct appeal constituted incompetence. In view of the evidence, we do not think that there is a reasonable probability that, had this evidence been admitted into evidence, the outcome of the defendant's trial would have been different. Nor do we think that, had defense counsel presented this issue for review upon direct appeal, there is a reasonable probability that the outcome of that appeal would have been different. There was no evidence that prior to the shooting the victim stumbled, swayed, fell, or leaned into the defendant's revolver, a projectile from which indisputably caused his death. There was no evidence to suggest that, in fact, the victim lost his balance in any way until after he had been shot, at which time, according to the testimony of Donald McElyea, he did, indeed, stumble and fall to the floor. Furthermore, the evidence was uncontradicted that one of the safety mechanisms with which the defendant's weapon was equipped was the need to pull its trigger in order for the gun to fire. Likewise uncontradicted was evidence of another of the gun's safety mechanisms, the

amount of pressure required to pull the trigger, 3½ pounds when the gun was already cocked and 11¾ pounds when it was not. Even if it were error for the trial court to have excluded the toxicology report from evidence on the basis of irrelevance, its inclusion would not, we think, have resulted in a different outcome at trial. Hence, appointed counsel's appraisal of the merits of this issue was not patently wrong. Nor was the failure of appellate counsel to raise the issue objectively unreasonable. Counsel cannot be said to have rendered ineffective assistance to the defendant for failure to raise this issue in the direct appeal. Thus, this issue, which could have been raised in the direct appeal, is properly deemed waived for purposes of defendant's post-conviction petition. Accordingly, we affirm the trial court's denial of the amended post-conviction petition as to this issue.

Concerning the second issue now presented for review, the defendant contends that the following colloquy between defense counsel and the court at the conclusion of the defendant's testimony deprived him of a fair trial as a consequence of the trial court's "hostility and attempts at judicial humor."

"MR. SEYMOUR [Defense counsel]: I have no other witnesses to call today, Your Honor.

THE COURT: You mean we're going to quit here in the middle of the afternoon?

MR. SEYMOUR: Think it would be a good time.

THE COURT: My dad never did let me unhitch until about sundown.

MR. SEYMOUR: I'm not quitting. I have other work to do.

THE COURT: Well, if they don't have any more things to tell us now, I guess we better go home. So you do that and don't talk about this case among yourselves or with anybody else. We'll see you at 9:30."

The entry on the record sheet indicates that on that date, June 14, 1982, the trial was recessed at 2:30 p.m. As he did with regard to the first issue here presented, defendant maintains that he was denied the effective assistance of counsel when counsel failed to raise this issue in the direct appeal.

██ █ Again, we have weighed the merits of this issue, fully briefed by counsel appointed in these proceedings. The defendant points out correctly that it is improper for a court to convey to a jury a belittling and resentful attitude toward defense counsel (*People v. Marino* (1953), 414 Ill. 445, 111 N.E.2d 534), and that attempts at judicial humor by a judge during a trial are ill-advised and inappropriate to the performance of judicial duties. (*People v. Merz* (1984), 122 Ill.

App. 3d 972, 461 N.E.2d 1380.) The State, we think accurately, describes the remarks of the trial court as "innocuous, isolated, lighthearted." For comments by a trial judge to constitute reversible error, the defendant must show that the remarks were prejudicial and that he or she was harmed by the comments. (*People v. Heidorn* (1983), 114 Ill. App. 3d 933, 449 N.E.2d 568.) We conclude that the issue was not patently meritorious so that the failure of appellate counsel to raise the issue on direct appeal constituted incompetence. In view of the nature of the remarks, any error on the part of the trial court in making them was harmless, and there appears to be no reasonable probability that, had they not been made, the outcome of the defendant's trial would have been different or, had defense counsel presented this issue for review in the direct appeal, the outcome of that appeal would have been different. Appointed counsel's appraisal of the merits of this issue in the direct appeal was not patently wrong, and her failure to raise the issue was not objectively unreasonable. Hence, counsel may not be said to have rendered to defendant ineffective assistance for failing to raise it. Therefore, this issue too, which could have been raised in the direct appeal, is properly deemed waived, and as to it we affirm the trial court's denial of the defendant's amended post-conviction petition.

We turn to the third and final issue defendant raises in this appeal, whether the trial court abused his discretion with regard to the length of the jury's deliberations from 1 p.m. on June 16, 1982, until 2:50 a.m. on June 17. Again, he contends that counsel's failure to raise this issue in the direct appeal constituted ineffective assistance.

The length of jury deliberations is a matter resting within the sound discretion of the trial court, and its judgment in this regard will not be disturbed unless this discretion has clearly been abused. (*People v. Daily* (1968), 41 Ill. 2d 116, 242 N.E.2d 170.) Whether the trial court has abused its discretion depends upon the circumstances of a given case. (*People v. Daily*, 41 Ill. 2d 116, 242 N.E.2d 170.) In the instant case the trial lasted six days, during which approximately 25 witnesses testified. At no time during their deliberations did the jurors indicate that they needed further instruction, were deadlocked, or were experiencing any difficulties of any kind. Nothing in the record indicates that the verdict arrived at was the result of fatigue or exhaustion. (See *People v. Kinzell* (1969), 106 Ill. App. 2d 349, 245 N.E.2d 319.) Trial counsel made no motion concerning the length of the jury's deliberations. The record does not suggest either that the trial court abused his discretion in permitting the jury to deliberate as it did or that the verdict was, as the defendant urges, the product of

an improper coercive influence.

For these reasons we perceive no reasonable probability that, had appellate defense counsel presented this issue for review in the direct appeal, the outcome of that appeal would have been different. Counsel's appraisal of the merits of this issue upon direct appeal was not patently wrong, and her failure to raise the issue was not objectively unreasonable. Thus, counsel did not render ineffective assistance for failure to raise it. The issue, which could have been raised in the direct appeal, is, therefore, properly considered waived, and we accordingly affirm the trial court's denial of the amended post-conviction petition as to this issue as well.

Affirmed.

WELCH, P.J., and HARRISON, J., concur.