THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GENE H. ARNETT, Defendant-Appellant.

Fifth District   No. 5—88—0558

Opinion filed June 18, 1991.—Rehearing denied September 25, 1991.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William Haine, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOWERTON delivered the opinion of the court:

A Madison County jury convicted Gene Arnett, defendant, of first-degree murder for the Interstate 270 shotgun shooting of Todd Scrum. He was sentenced to 40 years' imprisonment.

Defendant, while riding as a passenger in his own car, fired a shotgun out of the passenger window and hit Scrum, who was driving alongside defendant on Interstate 270.

Four days after the shooting, while investigating the scene of a residential burglary, officers from the Madison County Sheriff's Department spotted a car parked in a secluded area near railroad tracks, 100 yards from a burglarized house. Because the car appeared to have been abandoned in connection with the burglary, the officers went to the car to investigate. They found both its doors unlocked, its hood, engine, and radiator still warm; it had no license plates or license-applied-for sticker.

The officers initially and cursorily searched the car, checking the glove box to determine ownership, finding only a Venture receipt with a license number on it. The officers ran the license number and it came back to a person who lived in Godfrey, Illinois. The officers had the car towed to a local truck stop, where it sat for approximately two weeks. No inventory search of the car was conducted. The deputies were unable to contact the apparent owner.

Later, the Illinois Department of Criminal Investigation (DCI) informed the Madison County Sheriff's Department that the car was needed in a murder investigation. The DCI took custody of the car and, pursuant to a warrant, searched and found a spent shotgun shell

in the car. The DCI also took paint samples, which connected the car to Scrum's murder. After this second search, the sheriff's department discovered that the apparent owner had sold the car to defendant's father and that defendant's father had given defendant the car. Defendant was arrested and charged with first-degree murder.

Defendant claims: (1) the initial warrantless seizure of his car violated his fourth amendment rights; (2) the circuit court erred in refusing to instruct the jury on second-degree murder and involuntary manslaughter; (3) the State failed to prove him guilty of first-degree murder beyond a reasonable doubt; (4) he was denied effective assistance of counsel as guaranteed by the sixth amendment to the United States Constitution; and (5) the circuit court erred in refusing to grant his motion to quash the jury array. We affirm.

### I. THE SEIZURE OF THE CAR

Defendant moved to suppress the spent shotgun shell and paint samples seized by DCI during the second search claiming that the sheriff's initial search and seizure of defendant's car violated his fourth amendment rights (U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6), making the second search of his car, though pursuant to a warrant, illegal. (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) The circuit court denied defendant' motion.

The fourth amendment protection against unreasonable government search and seizure extends only to individuals who have a reasonable expectation of privacy in the place searched or property seized. (*Rakas v. Illinois* (1978), 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430.) In determining whether a reasonable privacy expectation exists, the court examines the totality of the circumstances and may consider whether defendant was legitimately present in the area searched, had a possessory interest in the area or property seized, had used the area searched or property seized, had the ability to control or exclude others from using the property, and had a subjective expectation of privacy in the property. (*People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355, citing *United States v. Lochan* (1st Cir. 1982), 674 F.2d 960, 965; *Rawlings v. Kentucky* (1980), 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556.) Thus, we must consider the scope of the search, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted. *Bell v. Wolfish* (1979), 441 U.S. 520, 559, 60 L. Ed. 2d 447, 481, 99 S. Ct. 1861, 1884.

Defendant argues that the sheriff's testimonial concession that the car could have been towed, irrespective of the burglary investigation, requires reversal. Defendant's argument sidesteps the fact that if the seizure is proper in the first instance, other circumstances, which might make it improper, are merely hypothetical. We are not persuaded that testimony of what might or could have been is dispositive of the officer's reasons for towing the car.

■ An automobile is deemed to be abandoned if the possessor makes a hurried departure on foot, leaving it behind. (See 1 W. La-Fave, Search & Seizure §2.5(a) (2d ed. 1987).) As stated by the Arkansas Supreme Court:

"Sometimes an automobile takes on the characteristics of a man's castle. Other times an automobile takes on the characteristic of an overcoat—that is, it is movable and can be discarded by the possessor at will. If appellant in his endeavors to avoid the clutches of the law had discarded his overcoat to make his flight more speedy, no one would think that an officer was unreasonably invading his privacy or security in picking up the overcoat and searching it thoroughly. In that situation most people would agree that the fleeing suspect had abandoned his coat as a matter of expediency as well as any rights relative to its search and seizure. What difference can there be when a fleeing burglar abandons his automobile to escape the clutches of the law? We can see no distinction and consequently hold that when property is abandoned officers in making a search thereof do not violate any rights or security of a citizen guaranteed under the Fourth Amendment." *Thom v. State* (1970), 248 Ark. 180, 182, 450 S.W.2d 550, 552.

In the case at bar, the officers had probable cause to believe that a car, located within 100 yards of a recent burglary, with its doors unlocked and its engine warm, was a "getaway" car. The search of the glovebox to determine ownership and the subsequent seizure and impounding of the vehicle were proper under these circumstances. See *California v. Greenwood* (1988), 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625; *Abel v. United States* (1960), 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683; *Hester v. United States* (1924), 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445.

■ The proper approach for evaluating compliance with the fourth amendment is to objectively assess the officer's actions in light of the facts and circumstances before him at the time without regard to his underlying intent or motivation. (*Scott v. United States* (1978), 436 U.S. 128, 135-38, 56 L. Ed. 2d 168, 176-78, 98 S. Ct. 1717, 1722-

23.) The record supports the theory that the police had a reasonable belief that defendant's car was abandoned incident to the burglary. Under the totality of the circumstances, a police officer who finds a car with a warm engine, the doors unlocked, no license plates, and no license-applied-for sticker, in an isolated area, could reasonably believe the car was abandoned incident to a burglary only 100 yards away.

Further, defendant, by leaving his car on a secluded gravel road, unlicensed, unregistered, and along the railroad tracks, had no expectation of privacy. Abandoned property may be examined and impounded constitutionally by the police, because justifiable expectation of privacy vanishes with abandonment. Probable cause is not required to examine abandoned property. (*Abel v. United States* (1960), 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683; *Hester v. United States* (1924), 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445.) There was nothing unlawful in the government's initial search of the car to determine ownership, and the subsequent search of that property was pursuant to a warrant. (*Abel v. United States* (1960), 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683.) The seizure and subsequent search of the abandoned automobile were proper and did not violate defendant's fourth amendment rights, and the evidence found therein properly was introduced at trial.

## II. THE INSTRUCTIONS

### A. SECOND-DEGREE MURDER

Defendant argues that he was denied a fair trial because the circuit court refused to instruct the jury on second-degree murder.

A defendant is entitled to a second-degree murder instruction if evidence exists in the record which, if believed, would reduce the charge from murder to manslaughter. (*People v. Proper* (1979), 68 Ill. App. 3d 250, 385 N.E.2d 882.) Such an instruction should not be given, however, when the evidence demonstrates that the homicide was murder. *Proper*, 68 Ill. App. 3d at 254, 385 N.E.2d at 885.

A person commits second-degree murder when one of two statutory factors mitigates the killing:

> "(1) At the time of the killing [the defendant] is acting under a sudden and intense passion resulting from serious provocation by the individual killed ***; or

> (2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but

his belief is unreasonable." Ill. Rev. Stat. 1987, ch. 38, pars. 9—2(a)(1), (a)(2).

There is no evidence of self-defense in this case. The only question is whether there is any evidence that the victim, Todd Scrum, seriously provoked defendant. Serious provocation is defined as "conduct sufficient to excite an intense passion in a reasonable person." Ill. Rev. Stat. 1987, ch. 38, par. 9—2(b).

Scrum was killed by a shotgun blast to the left temple, while he was driving on Interstate 270 between 12:30 a.m. and 1 a.m. on October 24, 1987. The only evidence of serious provocation comes from witnesses who testified that defendant had told them that Scrum had run into defendant's car, that he and the driver of the car pursued Scrum and attempted to force him to stop, that Scrum "flipped defendant the finger," and defendant "blew his doors off."

■ Acts recognized as constituting serious provocation are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse, but do not include mere words or gestures or trespass to property. *People v. Chevalier* (1989), 131 Ill. 2d 66, 544 N.E.2d 942.

■ ■ To reduce murder to second-degree murder, the manner of the defendant's retaliation must have been proportionate to the degree of provocation. (See *People v. Baggett* (1983), 115 Ill. App. 3d 924, 450 N.E.2d 913.) Defendant's retaliation was clearly out of proportion to Scrum's alleged acts: there is no proof that the collision between the cars was anything but accidental, and we refuse to elevate "flipping the finger" into the sort of act that justifies killing.

We have reviewed the record and find no evidence of serious provocation by Scrum. The circuit court correctly refused defendant's tendered jury instruction for second-degree murder.

## B. INVOLUNTARY MANSLAUGHTER

Next, defendant argues the circuit court erred when it refused to instruct the jury on involuntary manslaughter.

■ Involuntary manslaughter is defined as killing a human being by acts which "are likely to cause death or great bodily harm *** and [which are] perform[ed] *** recklessly." Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a).

A person acts recklessly when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow." Ill. Rev. Stat. 1987, ch. 38, par. 4—6.

■ When there is evidence in the record which, if believed by the jury, would reduce the crime of murder to manslaughter, an in-

struction defining the lesser crime should be given. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696; *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829.) However, an involuntary manslaughter instruction should not be given where the evidence shows that the homicide was murder, not manslaughter. (*People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373.) A manslaughter instruction can only be given if there is some evidence which shows the defendant killed unintentionally by the reckless performance of acts which caused the victim's death. (*People v. Whitt* (1986), 140 Ill. App. 3d 42, 487 N.E.2d 1246.) We examine the record for that evidence.

Defendant's girlfriend, called as a State's witness, was cross-examined:

"Q. *** —Miss Cleveland, when Gene was talking to you in the car on the 24th,—

A. Uh-huh.

Q. —and he first relates to you the shooting, did he tell you that he intended to kill the driver of that car?

A. He never said at that time. But whenever I talked to him on the phone the night I seen it on the news, *he told* [*sic*] *that he didn't mean to kill the guy. He just meant to blow his windshield out.*" (Emphasis added.)

▇▇▇ This is the sum total of evidence that defendant acted recklessly and unintentionally. The girlfriend's testimony of defendant's intent is insufficient to justify the giving of an involuntary manslaughter instruction. It is true that very slight evidence upon a given theory of a case will justify the giving of an instruction, but it is also true that we must be wary so as not to permit a defendant to demand unlimited instructions based upon the merest factual reference or witness' comment. (*People v. Everette* (1990), 141 Ill. 2d 147, 157, 565 N.E.2d 1295, 1299, citing *People v. Bratcher* (1976), 63 Ill. 2d 534, 541, 349 N.E.2d 31, 34.) Defendant's "mere statement that he did not intend to hurt or kill *** does not provide a sufficient basis to warrant giving an involuntary-manslaughter instruction." *People v. Whitt* (1986), 140 Ill. App. 3d 42, 49, 487 N.E.2d 1246, 1251; see also *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829; *People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314.

Furthermore, the circumstances surrounding the killing do not support defendant's assertion that his actions were reckless and not intentional. By defendant's own statements he either intended to blow the doors off or blow the windshield out of Scrum's car. "In cases where a defendant voluntarily and wilfully commits an act which has a natural tendency to cause death or great bodily harm, an involun-

tary manslaughter instruction is not warranted." (*People v. Whitt* (1986), 140 Ill. App. 3d 42, 49, 487 N.E.2d 1246, 1251.) Firing a shotgun with intent to either blow the doors off or blow the windshield out of an automobile traveling down an interstate has a natural tendency to cause death or great bodily harm.

The circuit court did not err in refusing the tendered instruction.

### III. REASONABLE DOUBT

Defendant argues that the State failed to prove him guilty of first-degree murder beyond a reasonable doubt because the evidence showed that he did not act with an intent to kill or do great bodily harm.

The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

Defendant's intent to commit murder logically is inferred from this evidence: he pointed a gun and fired it at Scrum, and this inference can be made despite defendant's testimony that he did not intend to kill anyone. *People v. Cannon* (1971), 49 Ill. 2d 162, 273 N.E.2d 829.

Evidence established that defendant had taken a .20-gauge shotgun from his brother's house around the time of the shooting, and others saw a shotgun in defendant's possession. The DCI found a spent .20-gauge shotgun shell in the back seat of defendant's car and wadding from a shotgun shell on the floorboard. It was determined that the shot recovered from Scrum's head and the wadding found in Scrum's car were consistent with the spent shell found in defendant's car.

Another man who drove a different car testified that only minutes before Scrum was shot, he, too, was shot and wounded by a shotgun blast on Interstate 270. This man testified that a "green-puke colored car" kept pulling up and back next to his car, and as he reached for his cigarette lighter, the next thing he remembered was seeing bits and pieces of himself all over his car. He gave the police officers a general description of a mid-70's car, dull green color, with rust on the bumper, and this description closely matched defendant's car.

A woman testified that on a different day she was driving towards Interstate 270 when she was approached by a car that pulled up alongside her. The passenger, who was less than three feet away from her, pointed a shotgun at her, she braked, and the shot barely

missed her windshield. She identified defendant as the man who shot at her.

Defendant was proven guilty beyond a reasonable doubt.

### IV. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues he was denied effective assistance of counsel when his attorney failed to give a closing argument.

To establish ineffective assistance of counsel, defendant must show that representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of trial would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

Defense counsel tendered instructions on second-degree murder and involuntary manslaughter, which the circuit court refused. When asked to give his closing argument, defense counsel responded, in front of the jury:

> "Your Honor, from the start of this case it's tried on the basis that the [S]tate could not prove beyond a reasonable doubt, that Todd Scrum was either intentionally or knowingly killed, but instead that it was a reckless act. In view of the Court's ruling today, I have no closing argument."

The competency of counsel will not generally extend to the exercise of judgment, discretion, trial tactics, or trial strategy even if appellate counsel or the reviewing court might have handled the matter differently. *People v. Barfield* (1989), 187 Ill. App. 3d 190, 543 N.E.2d 812.

Counsel restated his basic strategy to the jury one last time before resting. Counsel's decision was a tactical one which, in retrospect, proved unsuccessful, but does not demonstrate incompetence. From the record we see that this defense attorney zealously and capably defended his client.

We, therefore, find no ineffectiveness of counsel under *Strickland*.

### V. MOTION TO QUASH THE JURY ARRAY

Finally, defendant argues that the circuit court erred in refusing to grant defendant's motion to quash the jury array where the array was composed solely from Illinois drivers who defendant maintains were potential victims.

Section 2 of "An Act in relation to jury commissioners ***" (Ill. Rev. Stat. 1987, ch. 78, par. 25) provides that jury commissioners "shall prepare a list of all legal voters or if they desire it may include

the Illinois driver's license holders of each town or precinct of the county." Ill. Rev. Stat. 1987, ch. 78, par. 25.

To successfully challenge the selection of a jury array, the challenging party must prove: (1) a deviation from the statute; and (2) that defendant suffered an actual and substantial injustice because of the error charged. Ill. Rev. Stat. 1987, ch. 78, par. 35.

All the jurors chosen stated during *voir dire* that, even if they had heard about the highway shooting, they could recall no details of the incident. None had formed an opinion of defendant's guilt or innocence. They all stated that they could be fair and impartial. Defendant has failed to demonstrate actual and substantial injustice resulting from selecting the jury from a list of Illinois drivers.

In addition, defendant's argument, if upheld, would have serious ramifications on the ability of the State to provide a jury for the defendant in any "victim at random" crime. Any criminal choosing victims at random, as did defendant, could then successfully argue that no one could be a juror because all had been potential victims. Absurd. The law abhors an absurdity. That abhorrence justifies denial of defendant's claim.

The judgment of the circuit court of Madison County is affirmed.

Affirmed.

LEWIS and GOLDENHERSH, JJ., concur.