THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND J. GORNIK, Defendant-Appellant.

Third District No. 3—91—0404

Opinion filed April 7, 1992.—Rehearing denied May 22, 1992.

Ettinger, Pechter & Stillo, Ltd., of Oak Lawn (Adam N. Stillo, Jr., of counsel), for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant Raymond Gornik was charged by indictment with 52 counts of official misconduct (Ill. Rev. Stat. 1987, ch. 38, pars. 33—3(b), (c)). Following a bench trial, defendant was convicted on 48 counts of the indictment. On appeal, defendant claims that he was not proved guilty beyond a reasonable doubt and that certain evidence was obtained improperly. We affirm.

For the most part, the facts of this case were undisputed. Therefore, we need not detail the testimony of each of the witnesses but instead present a summary of the evidence relevant to our disposition. The defendant was elected to the office of regional superintendent of schools in Will County in 1986 and took office in August of 1987. Among other things, the superintendent's office was responsible for collecting fees from various sources, including fees from persons taking the general educational development (GED) test, application fees for school bus drivers' permits, and fees from teachers seeking to renew their teaching certificates. This money was deposited in an account designated as the institute fund. Section 3—12 of the School Code provides in part:

> "§3—12. Institute fund. All examination, registration and renewal fees shall be kept by the regional superintendent, together with a record of the names of the persons paying them. Such fund shall be the institute fund and shall be used by the regional superintendent to defray administrative expenses incidental to teachers' institutes, workshops or meetings of a professional nature that are designed to promote the professional growth of teachers or for the purpose of defraying the expense of any general or special meeting of teachers or school personnel of the region, which has been approved by the regional superintendent." Ill. Rev. Stat. 1987, ch. 122, par. 3—12.

Along with the fees referred to above, various other monies were also deposited into the institute fund. These included grant money, interest payments, fees charged by the superintendent's office for engraving of name plates and copying charges.

Much of the State's case in chief consisted of testimony by former employees of the superintendent's office who identified various payments authorized by defendant that were made from the institute

fund account. These payments were the bases of the charges against the defendant and included: expenses related to defendant's attendance at a political seminar; membership dues in the Boy Scouts of America; payments to individuals, including defendant's brother, for consulting fees on matters unrelated to teachers' institutes or workshops; tuition payments for members of the defendant's office staff; donations to various organizations, including the Will County Sheriff's Police Benevolent Fund, the Al-Hamid Temple, the United Pentecostal School, the Guardian Angel Home of Joliet, the Joliet Chamber of Commerce July 4th Celebration, the Joliet Drama Guild, the Joliet Breakfast Lions Club, the Kiwanis Charities and Kappa Alpha Psi Fraternity; tickets for high school football playoff games; tickets to annual dinner meetings; membership dues in the Joliet Region Chamber of Commerce and Industry; bottled drinking water for defendant's office staff; two Will County sesquicentennial medallions; rental of parking spaces for defendant's employees; annual membership dues in the Illinois Association of Regional Superintendents of Schools and the University of Illinois Alumni Association; tickets to a Chicago White Sox baseball game; and other expenditures unrelated to teachers' institutes or workshops. Two of the defendant's former employees testified that they had questioned defendant about the propriety of some of these expenditures. In addition, one of these same employees testified that defendant had stated on many occasions that the donations he was making were "going to get me lots of votes."

The defendant testified that he asked the county for an audit shortly after he took office. He later asked the State on numerous occasions to perform an audit but it was never done. The defendant also testified about the various expenditures from the institute fund account. He felt that they were proper and justified and were for educational or education-related programs. For example, defendant stated that he made donations to the United Pentecostal School and the Guardian Angel Home of Joliet because they were doing a "tremendous job" with young people. He provided parking spaces for the women on his staff as a protective measure so they would not have to walk around after dark looking for their cars. The defendant did not feel that he was doing anything improper or illegal.

On cross-examination, defendant admitted that he was aware that the expenditure of funds his office received from issuing teachers' certificates, from "bus receipts" and GED funds were restricted by statute. Defendant believed, however, that there was nothing wrong with the expenditures. On redirect examination, the defendant stated that his predecessor in office had made expenditures similar to those au-

thorized by defendant. The superintendent's office was audited shortly before defendant took office and no one had indicated to defendant that such expenses were improper. Following closing arguments, the defendant was found guilty of 48 counts of official misconduct.

■■ Defendant first contends that he was not proved guilty beyond a reasonable doubt because the institute fund contained money from sources other than those provided for by statute. Section 3—12 of the School Code provides that "[a]ll examination, registration and renewal fees *** shall be the institute fund" (Ill. Rev. Stat. 1987, ch. 122, par. 3—12). Defendant notes that other funds, such as application fees for bus drivers' permits, fees for GED examinations, nameplate engraving fees and copying charges, were also placed in the institute fund account. Defendant argues that the institute fund was, therefore, used as a general education fund for both deposits and expenditures. Under those circumstances, according to the defendant, it was impossible for the State to prove that the funds expended were the examination, registration or renewal fees which are restricted by section 3—12 for use in defraying the expenses of teachers' institutes, workshops or meetings. We disagree.

The defendant was charged in 41 counts of the indictment with official misconduct pursuant to section 33—3(b) of the Criminal Code of 1961 (the Criminal Code) (Ill. Rev. Stat. 1987, ch. 38, par. 33—3(b)). In 11 counts of the indictment the defendant was charged with official misconduct pursuant to section 33—3(c) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 33—3(c)). Defendant was convicted of 37 counts under section 33—3(b) and of all 11 counts under section 33—3(c). These sections provide:

"§33—3. Official Misconduct. A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:
***

(b) Knowingly performs an act which he knows he is forbidden by law to perform; or

(c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority." Ill. Rev. Stat. 1987, ch. 38, par. 33—3.

Each count of the indictment charged that the act which defendant was forbidden by law to perform or which was in excess of his lawful authority was "using funds restricted by Chapter 122, Section 3—15.12, Chapter 122, Section 3—12 and Chapter 95½, Section 6—106.1(a), Illinois Revised Statutes, 1987 and held in account number ***, also known as the Institute Fund." Section 3—15.12 of the

School Code (Ill. Rev. Stat. 1987, ch. 122, par. 3—15.12) relates to GED testing and provides that testing fees are to be paid into a special fund under the regional superintendent's control and "shall be used for the expenses incurred in administering and scoring the examination." Excess funds may be accumulated for up to three years and are then to be transferred to the institute fund. Section 6—106.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 6—106.1) relates to the issuance of school bus driver permits and provides that application fees are payable to the regional superintendent and are to be used "expressly for the refresher courses for school bus operators." Thus it is apparent that the bus driver permit application fees and the GED testing fees which were placed in the institute fund account were restricted to specific uses regardless of their placement in that account. The record is clear that the improper expenditures for which defendant was convicted were not related to either GED testing or bus driver refresher courses.

With respect to the other funds that were placed in the institute fund account, we reject the defendant's argument that his convictions cannot stand because other monies were improperly commingled with those required to be deposited in the fund. These additional revenues did not convert the institute fund into a general educational fund or permit its use for any purpose beyond that prescribed by statute. Whether or not funds derived from such sources as engraving fees, copying charges and grants could have properly been used for the expenditures at issue in this case, once those monies were placed in the institute fund their use was restricted by section 3—12 of the School Code. The expenditure of those funds by the defendant for purposes other than those authorized were acts forbidden by law or in excess of defendant's lawful authority within the meaning of section 33—3 of the Criminal Code.

■ Defendant next contends that the State failed to prove beyond a reasonable doubt, with respect to the charges based on section 33—3(b) of the Criminal Code, that defendant knew he was forbidden by law to expend the funds in the manner alleged. Defendant points out that he testified that he was simply following the past practices and procedures of prior administrations, that he attempted on numerous occasions to have an audit performed and that he did not attempt to conceal or cover up the expenditures. Defendant also notes that the presumption that a defendant knows the law does not apply to criminal proceedings under section 33—3(b). *People v. Samel* (1983), 115 Ill. App. 3d 905, 451 N.E.2d 892; *People v. Campbell* (1972), 3 Ill. App. 3d 984, 279 N.E.2d 123.

When faced with a challenge to the sufficiency of the evidence, the function of the reviewing court is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) In this case two of defendant's former employees testified that they questioned defendant concerning the propriety of some of the expenditures. One of those employees also quoted statements made by defendant indicating that some of the payments were politically motivated. Most significantly, defendant admitted that he was aware that the expenditure of funds received by his office for teachers' certificates, for "bus receipts" and for GED testing were restricted by statute. Moreover, the trial judge found that much of defendant's testimony in which he attempted to justify the expenditures was "simply incredible." We find that there was ample evidence to prove that defendant knew he was forbidden by law to expend the funds as he did.

Similarly, defendant's argument that he acted out of ignorance or mistake is also unavailing. As stated above, defendant was aware of the statutory restrictions on expenditures. While defendant maintains that he was acting in good faith and he believed the expenditures were proper, there was also evidence that defendant was motivated by self-interest. As our supreme court stated in a related context:

> "[A]lmost every example of official conduct could be classified as a 'mixed-interest' case. The craftiest of corrupt politicians are experts at making their self-dealing appear to be in the best interests of their constituents. To allow instances of self-dealing to go unpunished merely because the benefit the public official receives is 'incidental' or because the municipality receives the lion's share of the benefit would effectively prohibit the State from prosecuting all but the most egregious cases of official misconduct." (*People v. Scharlau* (1990), 141 Ill. 2d 180, 199, 565 N.E.2d 1319, 1328.)

We find that the defendant was proved guilty beyond a reasonable doubt.

■ Defendant also contends that the evidence seized at his office, primarily records related to the improper expenditures, should have been suppressed. Defendant maintains that the affidavit supporting the complaint for a search warrant did not establish probable cause and was based on uncorroborated hearsay.

In summary, the affidavit, signed and sworn to by a Will County sheriff's police officer, stated that on February 14, 1990, the officer

read an article in the Herald-News newspaper written by reporter Cindy Cain. The article stated that defendant had used funds from the institute fund to pay for various political, charitable and personal expenses. This information was acquired through the Freedom of Information Act. The article listed some of the expenditures made by defendant, including the election campaign seminar, alumni dues and tickets to the White Sox baseball game. The affidavit then quoted that part of section 3—12 of the School Code which states that the institute fund is to be used to defray expenses related to teachers' institutes, workshops and professional meetings. The affiant then stated his belief that this information established probable cause to believe that defendant had committed official misconduct.

Defendant acknowledges that no motion to suppress was filed, nor was any objection made when defendant's records were introduced at trial. Moreover, this issue was not raised in defendant's post-trial motion. Defendant nevertheless urges us to consider this issue under the plain error doctrine (134 Ill. 2d R. 615(a)). Alternatively, defendant argues that his defense counsel was ineffective in failing to raise this issue in the court below.

Generally, a reviewing court will not consider a defendant's claim of illegal search and seizure unless it was presented to the trial court. (*People v. Speed* (1982), 106 Ill. App. 3d 890, 436 N.E.2d 712; see also *People v. Odor* (1990), 197 Ill. App. 3d 328, 553 N.E.2d 1121.) In addition, to preserve an issue for review both a trial objection and a written post-trial motion raising the issue are required. (*People v. Steidl* (1991), 142 Ill. 2d 204, 568 N.E.2d 837; *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The evidence seized in this case was, in fact, trustworthy and there is no indication that if the State had been alerted to any alleged deficiencies in the affidavit it "could not have introduced more detailed testimony to make a showing of probable cause based other than upon the affidavit." (*Speed,* 106 Ill. App. 3d at 894, 436 N.E.2d at 715.) These factors weigh heavily against application of the plain error rule. (*Speed,* 106 Ill. App. 3d 890, 436 N.E.2d 712.) Under the circumstances, we find that this issue has been waived.

█ Finally, we decline to address defendant's claim that his trial counsel was ineffective in failing to seek suppression of the records of expenditures from the institute fund. In order to prevail on a claim of ineffective assistance of counsel, defendant must show that his counsel's representation fell below an objective standard of reasonableness and that but for counsel's ineffective representation, there is a reasonable probability that the outcome of the trial would have been dif-

ferent. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) A decision to file or not to file a motion is regarded as a matter of trial strategy which must be given great deference. (*People v. Bryant* (1989), 128 Ill. 2d 448, 539 N.E.2d 1221.) Counsel's failure to seek suppression of the institute fund records may have been based on his assessment that such a motion would have ultimately proved futile. For the reasons stated below, we are unable to deem such an assessment unreasonable on the basis of the record before us.

The protection against unreasonable search and seizure extends only to individuals who have a reasonable expectation of privacy in the place searched or the property seized. (*People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355; *People v. Arnett* (1991), 217 Ill. App. 3d 626, 577 N.E.2d 773.)

> "[T]he rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' Thus a man's home is, for most purposes, a place where he expects privacy, *but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited.*" (Emphasis added.) *Katz v. United States* (1967), 389 U.S. 347, 361, 19 L. Ed. 2d 576, 587-88, 88 S. Ct. 507, 516 (Harlan, J., concurring).

In this case it appears clear that defendant had no expectation of privacy in the institute fund records. Defendant testified that he attempted to have an audit performed on numerous occasions and that he did not attempt to conceal the expenditures. In addition, defendant was required by the School Code to submit to yearly audits by the State Board of Education (Ill. Rev. Stat. 1987, ch. 122, par. 2—3.17a (requiring that the audit report include amounts dispersed by the superintendent of schools, including the fund from which the disbursements were made and their purpose)), to annually present his books and vouchers for all expenditures for inspection by the county board (Ill. Rev. Stat. 1987, ch. 122, par. 3—6) and to annually publish in a newspaper or post in each school building under his jurisdiction an accounting of the institute fund, including the amounts distributed and the purposes for which the distributions were made (Ill. Rev. Stat. 1987, ch. 122, par. 3—12).

There remains the possibility that defendant had a legitimate expectation of privacy, protected by the fourth amendment, in the office

where the records were located. (See *People v. Janis* (1990), 139 Ill. 2d 300, 565 N.E.2d 633 (offices and commercial buildings may be subject to fourth amendment protection).) Such a determination requires an examination of the totality of the circumstances of a particular case, including whether the defendant had a possessory interest in the area, prior use of the area, the defendant's ability to control or exclude others, and whether defendant had a subjective expectation of privacy in the premises. (See *Johnson*, 114 Ill. 2d 170, 499 N.E.2d 1355; *Arnett*, 217 Ill. App. 3d 626, 577 N.E.2d 773; compare *Janis*, 139 Ill. 2d 300, 565 N.E.2d 633 (defendant had reasonable expectations of privacy in gravel area adjoining business), with *Thornton v. University Civil Service Merit Board* (1987), 154 Ill. App. 3d 1016, 507 N.E.2d 1262 (no reasonable expectation of privacy in police department office used by other officers).) Given that no motion to suppress was filed in this case, however, the record contains insufficient facts to resolve this issue.

For the reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

BARRY, P.J., and STOUDER, J., concur.