2021 IL App (2d) 190748-U
No. 2-19-0748
Order filed August 12, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-1746 |
| MARCUS WALKER, | ) ) ) | Honorable Charles E. Petersen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant invited error by abandoning his claim that his custodial statements were tainted by an impermissible *Terry* stop.  We will not review the claim under the plain-error doctrine, which does not extend to invited errors.

¶ 2    Following a jury trial in the circuit court of Kane County, defendant, Marcus Walker, was found guilty of being an armed habitual criminal (720 ILCS 5/24-1.7 (West 2016)).  Defendant argues on appeal that the trial court erred in denying his *pro se* motion to suppress evidence.  We affirm.

¶ 3                                  I. BACKGROUND

¶ 4    The charges against defendant were based on the discovery of a handgun in a backpack and defendant's custodial statements to police that the gun belonged to him. In his *pro se* motion, defendant sought to suppress the gun and the statements. Defendant contended that, on October 5, 2016, he was unlawfully stopped without reasonable suspicion—as required under *Terry v. Ohio*, 392 U.S. 1 (1968)—that he had committed or was about to commit a crime. He alleged that he was stopped about 40 minutes after someone called the Aurora Police Department and reported a black male sitting on the front steps of a house that the caller knew was vacant.

¶ 5    Defendant appeared *pro se* at the hearing on the motion. He testified that, on the date in question, he and his friend "Omar" had bought some snacks. Defendant put his snacks in Omar's backpack. They got to 442 Spruce Street and sat on the steps. Omar went to visit a girl who lived in the duplex next door. Omar went back and forth between the duplex and the steps where defendant was sitting. At some point, Omar left the backpack with defendant and told defendant not to leave. However, defendant planned to go to a hospital to visit a friend who had shot himself. Defendant arranged for a friend to drive him to the hospital. He told his friend to meet him around the corner.

¶ 6    Defendant was walking and talking on his phone. He noticed two police officers approaching him. When defendant tried to walk around them, one of the officers, Aurora police officer Jonathan Flores, put his hand on defendant's chest. Flores asked defendant if he was the one who had called the police, and defendant responded that he had not. Flores immediately started to frisk defendant. Defendant gave Flores his name and handed him a Sam's Club membership card for identification. The officers questioned defendant about an incident the day before in which Anthony Martell shot at the police and then shot himself. They asked defendant to write a statement, and he agreed after learning that he might be paid for cooperating. The officers then

took defendant back to 442 Spruce Street where he sat down to write the statement. When he finished the statement, the officers told him that there was a warrant from Du Page County for his arrest. The officers asked if the backpack (which defendant had left at 442 Spruce Street) belonged to defendant. Defendant said that it did not; he was just watching it for the owner. The officers searched the backpack.

¶ 7       The State moved for a directed finding on the motion to suppress. The State argued that (1) defendant denied owning the backpack and had abandoned it when he walked away from 442 Spruce Street without it; (2) the search of the backpack was a lawful search incident to the arrest pursuant to the warrant; and (3) the gun would have been discovered in an inventory search of the backpack. After defendant presented his argument in opposition to the State's motion, the trial court asked him, "just to be clear, the item that you seek to suppress is the contraband found in that backpack?" Defendant responded, "yes." The trial court granted the State's motion for a directed finding, reasoning that defendant had abandoned the backpack when he walked away from it and, therefore, could not claim that the search of the backpack violated his fourth amendment rights.

¶ 8       Counsel was subsequently appointed to represent defendant. Defendant's attorney filed a "motion to suppress statements," seeking to bar defendant's statements to police. The motion asserted that defendant did not knowingly and voluntarily waive his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966)). Following a hearing, the motion was denied.

¶ 9       At trial, Elizabeth Keenan testified that she observed a black man walk up to the residence at 442 Spruce Street and sit on the steps. She believed that the residence was vacant. Keenan did not see anybody else with the man. After observing the man for about 30 minutes, she called 911 to report him as suspicious.

¶ 10    Flores responded to the report. He testified that when he arrived, he parked his patrol car on Spruce Street, across the intersection east of 442 Spruce Street. Flores saw defendant get up from the steps at 442 Spruce Street and start to walk east. Flores walked toward him and asked him his name and if he had any identification. Defendant gave Flores his name and date of birth. He said he did not have any identification, but he gave Flores his Sam's Club membership card. Flores learned that there was a warrant for defendant's arrest. Defendant told Flores that he had information about an unrelated case, and Flores had defendant prepare a written statement.

¶ 11    Flores saw a backpack at the bottom of the steps to 442 Spruce Street. Flores testified that after defendant was arrested on the warrant, Flores searched the backpack and found a handgun.

¶ 12    The State presented evidence that defendant was questioned while in custody and gave a videorecorded statement admitting that the gun belonged to him. It was stipulated that defendant had two convictions of offenses listed in the armed habitual criminal statute.

¶ 13    Defendant testified that he and Omar bought snacks and that he put his snacks in Omar's backpack. Omar wanted to purchase marijuana from a woman who lived next door to 442 Spruce Street. Omar told defendant that the woman was not comfortable having strange men in the house, so defendant waited on the steps of 442 Spruce Street. While waiting, he talked on his cell phone to a woman he knew. At some point, Omar came out of the house and left his backpack on the ground. Omar then went back into the house. Defendant got up and started to go to a friend's house around the corner. He saw Flores approach at a fast pace. Flores asked defendant if he was the one who called 911. Defendant said he was not. Flores put his hand on defendant's chest and told defendant to stop. Flores then patted defendant down and asked him his name and for identification. Defendant gave Flores his name and his Sam's Club membership card. Flores wanted defendant to write a statement about Martell. Defendant sat on the steps at 442 Spruce

Street and wrote a statement. After defendant finished, Flores told him that there was a warrant for his arrest and took him into custody.

¶ 14    At the Aurora Police Department, defendant was questioned by detectives about the backpack. They told defendant that if he made a statement, he would be allowed to attend Martell's funeral. If he did not make a statement, they could connect him to the gun that Martell used to shoot himself.

¶ 15    After the jury found defendant guilty, he filed a motion for a new trial arguing, *inter alia*, that the trial court erred by denying the "motion to suppress statements." The trial court denied the motion and sentenced defendant to an eight-year prison term. This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17    Defendant argues on appeal that the trial court erred in denying his *pro se* motion to suppress evidence. Defendant contends that Flores improperly conducted a *Terry* stop that led to his arrest on a warrant and his incriminating custodial statements to police. Defendant maintains that the stop was improper because Flores lacked a reasonable suspicion that defendant had committed or was about to commit a crime. Further, the evidence that flowed from the stop should have been suppressed as the fruit of the poisonous tree. See generally *People v. Henderson*, 2013 IL 114040, ¶ 33. Defendant does not challenge the trial court's reasoning with respect to the gun found in the backpack. Because the trial court found that defendant abandoned the backpack, the constitutionality of the *Terry* stop was irrelevant. Accordingly, only defendant's statements are at issue in this appeal.

¶ 18    We initially note that "when the denial of a motion to quash arrest and suppress evidence is based on the grant of a motion for directed finding, the trial court does not view the evidence [in the light] most favorabl[e] to the [nonmovant] but, rather, (1) determines whether the [nonmovant]

- 5 -

has made out a *prima facie* case, then (2) weighs the evidence, including that which favors the [movant]." (Internal quotation marks omitted) *People v. Green*, 2014 IL App (3d) 120522, ¶ 28. The trial court's decision on a motion for a directed finding will be upheld unless it is against the manifest weight of the evidence. *Id.*

¶ 19    The fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6 of our state constitution (Ill. Const. 1970, art. I, § 6) protect people from unreasonable searches and seizures. *People v. Smith*, 152 Ill. 2d 229, 244 (1992). Subject to various exceptions, a warrant is normally required for a search or seizure to be reasonable. *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 16. *Terry* provides for one such exception. As we have explained, "*Terry* authorizes a police officer to effect a limited investigatory stop where there exists a reasonable suspicion, based upon specific and articulable facts, that the person detained has committed or is about to commit a crime." *People v. Smulik*, 2012 IL App (2d) 110110, ¶ 5. To determine if a reasonable suspicion existed, "a reviewing court should objectively consider whether information known to the officer at the time of the stop would warrant a person of reasonable caution to believe that a stop was necessary to investigate the possibility of criminal activity." *People v. Meo*, 2018 IL App (2d) 170135, ¶ 17.

¶ 20    The State contends that defendant forfeited any fourth amendment challenge to his statements. The State notes that, although in his *pro se* motion defendant sought suppression of his statements, at the hearing on the motion he indicated (in response to the trial court's inquiry) that it was the "contraband in the backpack" that he sought to suppress. We conclude that defendant did not simply forfeit any error—he invited it. Under the invited-error rule, "a party cannot complain of error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). Thus, it was reasonable for

the trial court to seek clarification of the issues based on the evidence and argument presented at the hearing. This is true even though, as defendant points out, he indicated at an earlier hearing that his *pro se* motion to suppress evidence sought suppression of his statements as well as the contents of the backpack. When a trial court hears a motion, it is entitled to rely on the movant's statement of the relief he or she seeks and to determine the dispositive issues accordingly. The trial court's analysis hinged on its finding that defendant abandoned the backpack and therefore had no expectation of privacy in it. *People v. Arnett*, 217 Ill. App. 3d 626, 632 (1991) ("Abandoned property may be examined *** constitutionally by the police, because justifiable expectation of privacy vanishes with abandonment.")[1] Given that finding, the constitutionality of Flores's encounter with defendant became irrelevant. We note that defendant does not suggest that he misunderstood the trial court's question. If he did, he was obliged to speak up once the trial court indicated that it did not need to decide whether an unconstitutional *Terry* stop occurred.

¶ 21    The State further notes that, in his posttrial motion, defendant argued that the trial court erred in denying his motion to suppress statements, but he did not mention the *pro se* motion to suppress evidence. (As seen, these were distinct motions; the former was based not on the constitutionality of Flores's encounter with defendant but on an alleged *Miranda* violation.) Defendant's failure to raise the issue in his posttrial motion forfeited review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (the defendant must object both at trial and in a written posttrial motion to preserve an issue for appellate review).

---

[1] It is undisputed that, when defendant walked away from 442 Spruce Street, he was not carrying the backpack but had left it at that location.

¶ 22    Defendant contends that even if the issue is not preserved for appeal, we should review it under the second prong of the plain-error doctrine.  "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence."  *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).  We note that defendant fails to elaborate on why the purported error here is subject to review under the second prong or to cite any authority on that subject.  He simply asserts that the second prong applies.  "Mere contentions, without argument or citation to authority, do not merit consideration on appeal." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12.  More importantly, we reiterate that we regard the alleged error here as not merely forfeited but as invited.  Plain-error review is unavailable in cases of invited error.  See, *e.g.*, *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17 ("[P]lain-error review is forfeited when the defendant invites the error.")

¶ 23                                    III. CONCLUSION

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 25    Affirmed.